**The FLINTKOTE COMPANY, a Massachusetts corporation, Plaintiff,**

v.

**TEXTILE WORKERS UNION OF AMERICA, an unincorporated association, Defendant.**

**Civ. No. 530–64.**

United States District Court
D. New Jersey.
June 29, 1965.

Stryker, Tams & Dill, Newark, N. J., for plaintiff.

Kapelsohn, Lerner, Leuchter & Reitman, Newark, N. J., for defendant.

SHAW, District Judge.

Plaintiff (employer) commenced an action against defendant (union) in the Superior Court of New Jersey seeking to restrain defendant from processing an alleged grievance under a collective bargaining agreement to arbitration. Defendant caused the removal of the action to this Court on petition alleging that it was one arising under § 301(a) of the Labor Management Relations Act, 29 U.S.C.A. § 185(a), and that this Court has original jurisdiction by virtue of § 301(c), 29 U.S.C.A. § 185(c). Defendant filed an answer to plaintiff's complaint and a counter-claim by which it seeks to compel plaintiff to submit to arbitration. Defendant now moves for judgment on the pleadings granting the relief sought by its counter-claim.

The pertinent facts which are not in dispute as evidenced by the pleadings may be summarized briefly as follows:

Plaintiff is a corporation authorized to do business in the State of New Jersey and it maintains a factory or place of business at East Rutherford, New Jersey. Defendant is an unincorporated association maintaining an office for the conduct of its business at East Paterson, New Jersey. Defendant is the recognized collective bargaining agent for certain employees of plaintiff at its East Rutherford plant and is a party to a collective bargaining agreement with plaintiff covering such employees. The term of this agreement was from April 27, 1962 to April 29, 1965. On or about January 10, 1964, plaintiff distributed a notice to all of its employees at the East Rutherford plant which reads as follows:

"TO THE EMPLOYEES OF THE FLINTKOTE DIVISION EAST RUTHERFORD AND LITTLE FERRY PLANTS

It is with deep regret that we announce the discontinuance of all operations at the East Rutherford and Little Ferry plants effective February 14, 1964.

Much effort has been expended by many people in an endeavor to reduce costs and place these operations on an economically sound basis, but we remain unable to price the products of these plants at a level which will provide a profit.

Additional capital expenditures cannot be expected to produce an economically sound manufactured cost-sales ratio, and therefore we are reluctantly compelled to discontinue operations.

We wish to express our sincere appreciation for the excellent company-employee relationship which has existed during the years."

Following this notice, plaintiff discontinued a substantial part of its operations at its East Rutherford plant and, as a result of partial plant closure, employment of certain union members was terminated. On April 8, 1964 defendant submitted the following stated grievances to plaintiff:

"(1) Union demands payment to terminated employees of accumulated severance units under Article XI of the contract regardless of attained age, because the company's closure of the plant prevents employees from attaining age 65 during the term of this or succeeding contracts.

(2) The union demands payment of lost wages, or other appropriate damages, to all employees terminated as a result of plant closure, and lost dues to the Union, to the termination date of the contract. By representing to the union during negotiations that the plant would remain in operation during the term of the contract, the company induced the union to withdraw its demand for severance pay, and the contract is an implied agreement by the company to keep the plant in operation for at least the term of the contract."

The grievances could not be satisfactorily adjusted and defendant requested arbitration. Plaintiff has agreed that grievance No. 1 is arbitrable under the terms of the collective bargaining agree-

ment and has agreed to submit it to arbitration in accordance with the arbitration provisions of the collective bargaining agreement. It refuses to submit to arbitration on grievance No. 2. The pertinent provisions of the collective bargaining agreement relating to arbitration are quoted as follows:

"Any matter involving the application and/or interpretation of this Agreement, or any grievance of an employee, which is subject to this Agreement, shall be handled as herein below set forth."

\* \* \* \* \* \*

"Any grievance which is not satisfactorily adjusted \* \* \* shall be promptly referred to arbitration."

\* \* \* \* \* \*

" \* \* \* The Arbitrator shall have no jurisdiction or authority to add to, subtract from, modify or alter any terms of this Agreement or any Agreements made supplemental hereto, without consent of the Employer and the Union \* \* \*."

Plaintiff alleges that grievance No. 2 does not involve the application and/or interpretation of the collective bargaining agreement and further alleges that this grievance is not one "of an employee subject to said written agreement." [1]

It seems to be conceded by the pleadings and the arguments of counsel that there was no express provision in the contract [2] relating to severance pay or any other express provision relating to termination of employment by plant closure out of which a grievance could arise. The position taken by defendant, as far as the Court can determine from the pleadings and argument of counsel, is that there *would have been* a provision in the labor agreement providing for severance pay if the union had not been induced during negotiations of the labor agreement to withdraw a demand for severance pay. The inducement, according to defendant, was a representation by plaintiff "that the plant would remain in operation during the term of the contract." In substance defendant argues that resort to the history of the bargaining negotiations will produce evidence which an arbitrator may consider to resolve the question of whether or not the term fixed by the agreement was the result of mutual understanding on the part of the parties that it be unconditional and irrevocable in point of period of time as to plaintiff, whereby any shut down of operations at the East Rutherford plant during the term would constitute a breach of the agreement.

Generally a labor agreement, regardless of the period of duration fixed by the parties, remains in effect during such period only so long as the underlying employer-employee relationship which brought it into being continues to exist. It can serve no future continuing purpose after that relationship has been dissolved. This circumstance is inherent by the very nature of this type of agreement governing an employer-employee relationship. Therefore, *in the absence of some provision in the labor agreement to the contrary*, there is no obligation to pay wages or confer other benefits after employment has been terminated by a valid [3] discontinuance of the employer's business. See Leather Workers' Union v. Brodsky and Son

---

1. Complaint, Par. 7. The allegation is predicated it seems on plaintiff's argument that plant closure terminated the continued existence of the labor agreement, dissolving the employer-employee relationship.

2. Except for the excerpts cited in the pleadings, the Court does not have the labor agreement before it as a matter of record.

3. It has not been suggested by defendant that plaintiff closed its plant to evade compliance with the labor agreement. So far as can be determined from what the Court has before it, plant closure occurred by reason of circumstances not anticipated at the time of the making of the agreement.

(E.D.Pa. April 28, 1964), 56 L.R.R.M. 2121. In that case the Court stated:

"Inasmuch as the duty to arbitrate is contractual and since the contract in this case is to arbitrate matters concerning the meaning and application of the provisions of the collective bargaining agreement, we must look to that agreement to find provisions concerning whose meaning or application the dispute as to the three points mentioned exists."

\* \* \* \* \* \*

"As to the company's action in shutting down the plant and its failure to give advance warning of its intention to do so, the plaintiff has not been able to point to any provision in the contract that it seeks to have applied or interpreted, and, from an examination of it, I find no provision that could be applied or interpreted. As a result, I cannot find that the parties have agreed to arbitrate this matter." (p. 2122)

This does not mean that rights in the nature of fringe benefits established by the provisions of the labor agreement and vested are necessarily extinguished by termination of the employer-employee relationship. See Goodall-Sanford, Inc. v. United Textile Workers, 233 F.2d 104 (5th Cir. 1956) aff'd. 353 U.S. 550, 77 S.Ct. 920, 1 L.Ed.2d 1031 (1957); Oddie v. Ross Gear and Tool Co., 305 F.2d 143 (6th Cir. 1962), cert. denied, 371 U.S. 941, 83 S.Ct. 318, 9 L.Ed.2d 275 (1962).

The difficulty here is that defendant's position cannot be maintained on the basis of any language of the labor agreement to which it points. Nor is it contended that there was any ambiguity in the language used fixing the term of the agreement. What defendant seeks to establish and import into the agreement is a collateral understanding of what was intended by the term fixed, supported by alleged evidence to be derived from the history of the bargaining negotiations. Except for the naked assertion of defendant that plaintiff represented that it would not close its plant during the term of the agreement, inducing defendant to waive inclusion of a provision for severance pay, there is nothing before the Court to indicate the specific character of such evidence.

It, of course, would not be the function of the Court to assess the probative value of evidence to be produced before an arbitrator. But it is the function of the Court to determine in the first instance whether there is an arbitrable issue involving "the application and/or interpretation of this Agreement, or any grievance of an employee which is subject to this Agreement." Concededly there is no language in the agreement to be interpreted nor is the alleged grievance associated with any provision of the contract conferring rights upon employees. At best there could only be a question of the intent and mutual understanding of the parties as to the *application* of provisions fixing a term during which the agreement would remain in effect.

The mere fact that the language of the agreement fixing the term thereof is unambiguous is not controlling. The question of what the parties intended to be the effect of what was stated may still be open. Extraneous evidence may be offered, not to vary or supplement the terms of a written agreement, but rather to shed light upon what the parties intended by the language that was used. This rule of contract law is well stated in the case of Casriel v. King, 2 N.J. 45, 65 A.2d 514 (1949). In that case the Court stated:

"The admission of evidence of extrinsic facts is not for the purpose of changing the writing, but to secure light by which to measure its actual significance. Such evidence is adducible only for the purpose of interpreting the writing— not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said. So far as the evidence tends to show not

the meaning of the writing, but an intention wholly unexpressed in the writing, it is irrelevant." (65 A.2d at 517)

This rule of construction is particularly applicable in labor agreements. See Association of Westinghouse Salaried Employees v. Westinghouse Electric Corporation, 283 F.2d 93 (3rd Cir. 1960); Communications Workers of America v. Pacific Northwest Bell Telephone Company, 337 F.2d 455 (9th Cir. 1964); Acme Markets, Inc. v. Retail Clerks International Union, Local 1357, 235 F.Supp. 814 (D.C.Pa.1964).

■ The threshold question of whether there is an arbitrable issue must be decided by the Court. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). See also United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960). The Warrior case, supra, involved contracting out of work "that could and previously has been performed by Company employees." The union asserted a grievance and, when it was denied by the employer, sought arbitration. The employer refused to submit to arbitration taking the position that the contracting out of work was "strictly a function of management." The language of that decision, dealing with the role of the courts as distinguished from that of the arbitrator, is quoted as follows:

"The Congress, however, has by § 301 of the Labor Management Relations Act, assigned the courts the duty of determining whether the reluctant party has breached his promise to arbitrate. For arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. Yet, to be consistent with congressional policy in favor of settlement of disputes by the parties through the machinery of arbitration, the judicial inquiry under § 301 must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator power to make. the award he made. An order to arbitrate *the particular grievance* should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation *that covers the asserted dispute*. Doubts should be resolved in favor of coverage. (Emphasis supplied)

"We do not agree with the lower courts that contracting-out grievances were *necessarily* excepted from the grievance procedure of this agreement. To be sure, the agreement provides that 'matters which are strictly a function of management shall not be subject to arbitration.' But it goes on to say that if 'differences' arise or if 'any local trouble of any kind' arises, the grievance procedure shall be applicable." 363 U.S. at 582, 583, 80 S.Ct. at 1353. (Emphasis supplied)

\* \* \* \* \* \*

"In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad. Since any attempt by a court to infer such a purpose necessarily comprehends the merits, the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator.

"The grievance alleged that the contracting out was a violation of the

collective bargaining agreement. There was, therefore, a dispute 'as to the meaning and application of the provisions of this Agreement' which the parties had agreed would be determined by arbitration." 363 U.S. at 584, 585, 80 S.Ct. at 1354.

Commenting on Warrior, supra, in his concurring opinion in American Mfg., supra, Justice Brennan said:

> "On the basis of inconclusive evidence, those courts [lower] found that Warrior was in no way limited by any implied covenants of good faith and fair dealing from contracting out as it pleased—which would necessarily mean that Warrior was free completely to destroy the collective bargaining agreement by contracting out all the work." 363 U.S. at 572, 80 S.Ct. at 1365.

American Mfg., supra, involved the discharge of an employee and a provision in the labor agreement which reserved to management power to suspend or discharge any employee "for cause." There was a broad arbitration clause. The employer refused to arbitrate and the district court upheld its refusal. The Supreme Court reversed stating:

> "The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract. Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for." 363 U.S. at 567, 568, 80 S.Ct. at 1346.
>
> \*   \*   \*   \*   \*   \*
>
> "The union claimed in this case that the company had violated a *specific provision of the contract*. The company took the position that it had

not violated that clause. There was, therefore, a dispute between the parties as to 'the meaning, interpretation and application' of the collective bargaining agreement. Arbitration should have been ordered." 363 U.S. at 569, 80 S.Ct. at 1347. (Emphasis supplied.)

The Wiley case, supra, involved a change of employers as the result of a merger and the question presented was whether the collective bargaining agreement survived the merger imposing upon the successor of the merged employer the duty to arbitrate grievances in accordance with a collective bargaining agreement to which it had not been a party. There the Court stated:

> "We hold that the disappearance by merger of a corporate employer which has entered into a collective bargaining agreement with a union does not automatically terminate all rights of the employees covered by the agreement, and that, in appropriate circumstances, present here, the successor employer may be required to arbitrate with the union under the agreement." 376 U.S. at 548, 84 S.Ct. at 914.

The Sinclair Refining case, supra, involved an action commenced in the district court by the employer pursuant to § 301 of the Act seeking judgment for damages against an international and local union on allegations of breach on the part of the unions of a no-strike provision in the collective bargaining agreement. The unions contended that the subject matter of this litigation was referable to arbitration under the collective bargaining agreement. The Court held that the employer was not bound to submit to arbitration stating:

> "There is not a word in the grievance and arbitration article providing for the submission of grievances by the company. Instead, there is the express, flat limitation that arbitration boards should consider only employee grievances. Furthermore, the article expressly provides that arbitration may be in-

voked only at the option of the union. At no place in the contract does the union agree to arbitrate at the behest of the company. The company is to take its claims elsewhere, which it has now done." 370 U.S. at 243, 82 S.Ct. at 1322.

■ It must be conceded that there is language in the Supreme Court opinions cited which, considered out of context with the factual background, lends support to defendant's argument. It is also noted that none of these cases, and none which independent research has uncovered, are in point of fact precisely analogous to the situation here. But one thing is clear. The Court in the first instance must interpret the collective bargaining agreement to determine whether there is an arbitrable issue. Interpretation by the Court touching upon the merits of the dispute is forbidden. Passing upon the merits is the exclusive function of the arbitrator and, in the exercise of this function, it may be necessary in certain cases for him to consider whether the alleged arbitrable issue is frivolous. In this area there may be overlapping of the function of the Court and the function of the arbitrator. For further discussion of this subject see Smith & Jones, The Supreme Court and Labor Dispute Arbitration: The Emerging Federal Law, 63 Mich.L.Rev. 751 (1965).

■ The mere fact of the existence of an arbitration clause like the one here does not make every *alleged* grievance arbitrable. The agreement must embrace the subject matter of the alleged grievance so that it would appear that the arbitrator *could* make an award: " * * * his award is legitimate only so long as it draws its essence from the collective bargaining agreement." United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960); see also, H. K. Porter Co. v. United Saw, File & Steel Products Workers, 333 F.2d 596, 600 (3rd Cir. 1964).

■ ■ There is no substantive provision in this collective bargaining agree-

ment which has been brought to the Court's attention that would cover the subject of severance pay. Defendant contends that evidence it would be able to produce before the arbitrator would disclose an implied covenant to pay wages to employees after plant closure prior to expiration of the term of the collective bargaining agreement. Plaintiff denies the existence of any such evidence and thereby creates a genuine issue of material fact which compels the Court to deny defendant's motion for summary judgment. An appropriate order in conformity herewith will be submitted.