INTERNATIONAL UNION, DISTRICT 50, UNITED MINE WORKERS OF AMERICA and Local Union No. 12799, International Union, District 50, United Mine Workers of America, Plaintiffs,

v.

MATTHIESSEN & HEGELER ZINC COMPANY, a corporation, Defendant.

Civ. A. No. 161-C.

United States District Court
N. D. West Virginia.

Oct. 2, 1968.

R. L. Theibert and M. E. Boiarsky, Charleston, W. Va., for plaintiffs.

Oscar J. Andre, Steptoe & Johnson, Clarksburg, W. Va., for defendant.

MAXWELL, Chief Judge.

This action is now before the Court on plaintiffs' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. In their complaint, plaintiffs, two labor organizations, seek specific performance of arbitration provisions of a collective bargaining agreement and an order of the Court requiring defendant, the employer, to arbitrate grievances involving discharged and suspended employees. The initial issue presented is whether summary judgment may be properly rendered at this stage of the proceedings.

Plaintiffs allege in their complaint and defendant admits in its answer that jurisdiction of the Court arises under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A., Section 185 (1965).

Summarized, the factual background as presented by the record is that one plaintiff is an international labor organization and the other plaintiff is a constituent local union of the international organization. Defendant is an Illinois corporation authorized to do business in West Virginia. Defendant has a place of business at Spelter, Harrison County, West Virginia, within the jurisdiction of the Court and the place of employment of the discharged and suspended employees. Plaintiffs and defendant entered into a collective bargaining agreement in April, 1965, later supplemented by an agreement executed in June, 1966. In the agreement defendant recognized the plaintiffs as the exclusive bargaining agent of the employees "with respect to wages, hours of work, and other conditions of employment."

In September, 1966, the defendant employer discharged eleven employees and suspended eleven other employees for two weeks. Both the discharged and suspended employees filed written grievances under the collective bargaining agreement, Article VIII,[1] and exhausted the five steps therein provided without

1.
### ARTICLE VIII
#### Grievances

Section 1. The Grievance Committee of the UNION shall consist of not more than five (5) employes, including a chairman and steward.

Section 2. Should any grievance or dispute arise between the COMPANY and the UNION in connection with any provisions of this Agreement an earnest effort shall be made to settle such grievance or dispute in the following sequence:

FIRST, between the aggrieved employee and his immediate Supervisor.

SECOND, if not settled in the First Step, then between the aggrieved employe, his Steward, and the immediate Supervisor involved.

THIRD, if not settled in the Second Step, the grievance shall be reduced to writing and handled between a member or members of the Grievance Committee, the Steward, Foreman or Supervisor and the Area Supervisor involved or his designated representative.

FOURTH, if not settled in the Third Step, the grievance shall be handled between the Grievance Committee (at least a majority to be present) and the Works Manager and/or his designated representative.

FIFTH, if not satisfactorily settled in the Fourth Step, the grievance shall be handled between a designated representative of International Union, District 50, United Mine Workers of America, together with the Grievance Committee, and the Works Manager and/or his designated representatives.

The aggrieved employe may be present in the Third, Fourth or Fifth Steps, at his own request, or at the request of either party to this Agreement.

In the interests of prompt handling of grievances, time limitations shall be:

Steps 1 and 2—Each two working days.

Steps 3 and 4—Total of seven working days.

This is two weeks for a grievance to be handled up to the 5th Step. If not satisfactorily settled in the Fourth Step, a final answer will be given within a period of 30 days.

reaching a settlement. The plaintiffs then requested the defendant to arbitrate the grievances under Article IX[2] of the agreement.

The complaint alleges defendant refused to agree to arbitrate and the defendant in its answer asserts that the arbitration provisions of the collective bargaining agreement provided only for arbitration of differences as to the meaning of provisions of the agreement and not to grievances properly considered under Article VIII.

In their Grievance Reports the employees relied on Article II, Section 2,[3] of the collective bargaining agreement prohibiting "discrimination, coercion, interference or restraint" by any party thereto "because of membership or nonmembership in the union," and on Article VI, Section 4,[4] of the agreement dealing with seniority.

Subsequent to institution of this action on December 15, 1966, the eleven discharged employees filed charges against defendant with the National Labor Relations Board, in Pittsburgh, Pennsylvania, asserting their employment had been terminated by defendant because of their union membership and activities in behalf of other employees incident to collective bargaining. One discharged employee filed his charge with the NLRB on or about January 23, 1967, and the other ten discharged employees filed their charges on or about March 21, 1967.

Plaintiffs served their motion for summary judgment on January 22, 1968, and defendant served its amended answer to the complaint on January 24, 1968, setting out therein a Fourth Defense relating to the content of the charges filed by the discharged employees with the NLRB.

Guided by these essential phases of the proceedings, attention now turns to applicable and controlling principles of law. A considerable body of law has been developed on the points and issues here involved. Some fundamental principles have evolved while others have become stable.

Succinctly stated, plaintiffs move for summary judgment for specific performance of arbitration provisions of a labor contract and a court order requiring defendant to arbitrate.

Summary judgment sought "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." F.R.C.P., Rule 56(c).

 Summary judgment procedures may be appropriately employed in adjudication of the arbitrability of issues in

2. .ARTICLE IX
Arbitration
Section 1. In the event that differences shall arise between the COMPANY and the UNION as to the meaning of any provision of this Agreement, and such differences are not otherwise settled, such differences, at the request of either party, shall be submitted to arbitration.

3. ARTICLE II
Recognition
\* \* \* \* \*
Section 2. There shall be no discrimination, coercion, interference or restraint by the COMPANY or the UNION or by any of their agents against any employe because of membership or nonmembership in the UNION, and the UNION agrees that there shall be no solicitation or other promotional UNION activities on COMPANY time.
\* \* \* \* \*

4. ARTICLE VI
Seniority
\* \* \* \* \*
Section 4. In the event a grievance shall arise with respect to the selection of any employe for lay-off, re-employment, transfer, demotion, or promotion to jobs within the bargaining unit, such grievance may be brought up under Article VIII of this Agreement. Any such grievance must be presented to the Works Management in writing within five (5) days after the action causing the grievance to be subject to the terms of this Agreement.
\* \* \* \* \*

labor arbitration clauses in collective bargaining agreements. International Association of Machinists, Lodge 1652 v. International Aircraft Services, Inc., 302 F.2d 808 (4th Cir. 1962); General Teamsters, Chauffeurs and Helpers Union, Local No. 782, etc. v. Blue Cab Co., 353 F.2d 687 (7th Cir. 1965). "One who moves for summary judgment has the burden of demonstrating that there is no genuine issue of fact. Any doubt as to the existence of such an issue is resolved against him." Barron & Holtzoff, Federal Rules of Civil Procedure, Sec. 1235 (Rules Ed. 1958)) Specific enforcement procedures may be employed in appropriate labor arbitration cases. John Wiley & Sons, Inc. v. Livingston, President of District 65, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); International Association of Machinists, Lodge 1652 v. International Aircraft Services, Inc., supra; District 50, United Mine Workers of America v. Chris-Craft Corp., 385 F.2d 946 (6th Cir. 1967); International Union of Electrical, Radio and Machine Workers, etc. v. General Electric Co., 278 F.Supp. 991 (S.D.N.Y.1968). A strong national labor policy favors arbitration as a means of resolving labor disputes, but arbitration is consensual and the scope of the arbitrator's jurisdiction is determined by the collective bargaining agreement. In action to compel arbitration the question of arbitrability is in the first instance for the courts. District 50, United Mine Workers of America v. Chris-Craft Corp., supra; Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962). This area of the law has been effectively summarized in International Union of Electrical, Radio and Machine Workers, etc. v. Westinghouse Electric Corp., 218 F.Supp. 82, 83 (S.D. N.Y.1963), in the following language:

> The principles governing labor arbitration under agreements have been delineated in the trilogy of the Steelworkers cases decided in 1960. (United Steelworkers of America v. American Manufacturing Company, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403; United Steelworkers of America v. Warrior & Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed. 2d 1409; United Steelworkers of America v. Enterprise Wheel and Car Corporation, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424). The underlying rationale of those holdings rests upon the federal policy to promote industrial peace through collective bargaining agreements and the recognition that a major factor in achieving that objective is the grievance machinery established by the parties to resolve disputes as part and parcel of the collective bargaining process itself. Although viewed in so favorable a climate, the arbitral process for the resolution of grievances is not imposed by law, but must rest upon a consensual basis. Thus the Court's role is limited. It has no concern with the merits of any particular grievance. Its sole inquiry is restricted to whether the parties did agree to arbitrate the grievance. The issue is to be decided within the framework of their collective bargaining agreement. And when the parties have entered into a comprehensive arbitration provision, any challenge that a grievance is not intended to be covered thereunder must find support in unmistakably clear language of exclusion; arbitration of a particular dispute is to be ordered unless it may be said with positive assurance that it is excluded by the contract. Whatever doubts exist as to whether the grievance is within the ambit of the arbitral process are to be resolved in favor of coverage. The defendant here contends that it meets the exacting test imposed upon one who challenges arbitration.

■ In resolving the question of arbitrability, the burden is on plaintiff to establish that specific performance is appropriate—that the issue is in fact an arbitrable one. Local No. 149, American Federation of Technical Engineers v. General Electric Co., 250 F.2d 922 (1st Cir. 1957); International Union of Operating Engineers, etc. v. Monsanto

Chemical Co., 164 F.Supp. 406 (W.D. Ark.1958).

The immediate question for this Court is whether issues presented in this case are arbitrable under the language and terms of the agreement between the parties in this action. The Grievance Reports of the eleven discharged and the eleven suspended employees cites Article VI of the agreement relating to seniority and Article II, Section 2, relating to discrimination or restraint because of union membership or non-membership.

The complaint alleges that a satisfactory settlement of the grievance could not be reached through efforts under Article VIII procedures in the agreement, that plaintiffs requested defendant to join in arbitration, and that defendant refused to agree to arbitration. The complaint alleges that defendant, by refusing to arbitrate, has violated the agreement, especially Articles VIII and IX thereof. (Article VIII relates to grievances and the detailed provisions for handling them. Article IX relates to arbitration.)

The grievance of the eleven discharged employees asserts they "have been unjustly and discriminatorily discharged" and the grievance of the eleven suspended employees asserts they have been "discriminatorily and unjustly laid off." These assertions appear to have their roots in Article VI, on seniority, and Article II, Section 2, on union activity. The charges filed by the discharged employees with the NLRB appear to have their roots primarily in the union activity provision of Article II, Section 2. No other grievance is indicated in the record.

■ As above stated, the Court's role here is limited. Its sole inquiry at this time is restricted to whether the parties did agree to arbitrate the grievance and the issue is to be decided within the framework of the collective bargaining agreement.

■ When doubt exists as to whether the grievance is within the ambit of the arbitral process, as provided in the chosen language of the agreement, such doubt is to be resolved in favor of coverage and inclusion. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960); International Union of Electrical, Radio and Machine Workers, etc. v. Westinghouse Electric Corp., supra.

The language of the agreement here involved seems clear and expressive. Article VIII details the procedural steps in handling grievances, but does not mention arbitration. Article IX provides:

In the event that differences shall arise between the Company and the Union as to the meaning of any provision of the Agreement, and such differences are not otherwise settled, such differences, at the request of either party, shall be submitted to arbitration.

Another section of Article IX prescribes the arbitration procedures and is not here involved.

Plaintiffs' position is that the grievance of the discharged and suspended employees, as processed through the grievance procedures, is a matter properly arbitrable under Article IX. Defendant's position is that the grievance procedures are covered completely under Article VIII and that arbitration is limited by the language of Article IX to differences as to "the meaning of any provision of this Agreement."

In Local Union No. 483, International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, etc. v. Shell Oil Co., 369 F.2d 526 (7th Cir. 1966), the agreement provided for arbitration in the event complaints and controversies arose out of the "application or interpretation" thereof and remained unsettled after grievance procedures were exhausted. The complaint charged discrimination in work assignments. The court's judgment required arbitration of the grievance under the language of the agreement. Controversies arising from the "application or interpretation" of the agreement in the *Shell Oil Co.* case are distinguishable

from differences as to "the meaning of any provision of the Agreement" now before the Court. Local Union No. 24, International Brotherhood of Electrical Workers v. Hearst Corporation, 352 F. 2d 957 (4th Cir. 1965), is likewise distinguishable. No contention has been made, so far as the present record discloses, that any differences exist as to the meaning of any provision of the agreement in the present case, except that plaintiffs take the position that arbitration applies and defendant takes the position that arbitration does not apply.

The absence of any mention of arbitration in the grievance procedures in Article VIII and the specific language limiting the reach of arbitration in Article IX are significant. *Expressio unius est exclusio alterius.* In this agreement the language excluding the grievances here involved from arbitration procedures in Article IX appears to be unmistakably clear. There was no apparent intent—no meeting of the minds—no consensual agreement to arbitrate the grievances presented in this action.

The collective bargaining contractual language employed here does not fit the pattern of agreement utilized in those cases where arbitration has been judicially obtained.

An annotation, 24 A.L.R.2d 752–593, and supplemented, 3 A.L.R.2d Later Case Service 671, treats "Matters Arbitrable under Arbitration Provisions of Collective Labor Contract," but fails to disclose a decided case involving the interpretation and construction of contract language comparable to the arbitration article in the litigation before this Court.

Here we deal with contractual language that appears to stand alone and apart from arbitration provisions in cases where arbitration has been ordered as the result of labor disputes, such as are complained of here. We find no case where the language of the contract submitted for review in this Court, or terms expressing similar understanding or agreement, have been the basis of court ordered arbitration.

It is the expressed intent, frequently referred to in labor law cases as a consensual agreement, that portrays "the meeting of the minds" of the parties, and which must be the basis of the Court's later determination of arbitrability in event justiciable issue should arise.

The contractual terms here stand as an island against the flow of statutory and decisional law in the field of similar labor disputes. Faced with the contractual language presented in this litigation, the Court, in order to grant the prayer for relief sought by the complaint, would be compelled to infuse into the expressed contract an expanded overriding national labor policy. This Court does not believe that enactments of Congress have advanced such extensions, and it does not appear that court decisions have impressed such a labor policy into the collective bargaining process or its end product.

Accordingly, the Court finds that the motion for summary judgment in this case is procedurally correct, but for the reasons stated, the motion for summary judgment here will be denied by an appropriate order which will also file this opinion.