**MURPHY DIESEL COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent.

**No. 18699.**

United States Court of Appeals, Seventh Circuit.

Dec. 3, 1971.

Steve Enich, Milwaukee, Wis., for petitioner.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Ronald I. Tish, Atty., N.L.R.B., Washington, D. C., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Leonard M. Wagman, Lawrence H. Pelofsky, Attys., N.L.R.B., for respondent.

Before KNOCH, Senior Circuit Judge, KILEY, Circuit Judge and CAMPBELL, Senior District Judge.*

KNOCH, Senior Circuit Judge.

Petitioner, Murphy Diesel Company, seeks to set aside an Order of the respondent, The National Labor Relations Board, issued July 31, 1970, reported at 184 NLRB No. 87. The Board has filed a cross application for enforcement of its Order.

The Board found a violation of § 8(a) (5) and (1) of the National Labor Relations Act, as amended, Title 29 U.S.C. § 151 et seq., by unilateral revision and implementation of rules on absenteeism and tardiness, by refusing to bargain with District No. 10, International Association of Machinists and Aerospace Workers, AFL-CIO, respecting those rules, modifying the terms of the collective bargaining agreement then in effect with that Union without its consent, by denying certain employees holiday pay (pursuant to those rules) and by refusing to process grievances based on those denials of pay.

The Board's Order directs Murphy to cease and desist from these and related unfair practices and to cancel the new rules, withdraw disciplinary notations based on them from employees' files, make the employees financially whole and to bargain with the Union respecting promulgation and implementation of absenteeism and tardiness rules, embodying any agreement reached in a signed contract, to make records available for the Board's agents to determine back pay due and to post notices.

The 1968–70 agreement between Murphy and the Union (who have been parties to agreements covering Murphy's employees at its West Allis plant in Wisconsin since 1941) provided that except as expressly limited "all management functions are reserved to the Company, subject to the other provisions" of the agreement. There were no provisions relating to work rules on absence or tardiness. There was testimony that Murphy's right to impose work rules and discipline was not raised at the negotiations.

In 1966, the plant superintendent had posted shop work rules which referred to the importance of regular prompt attendance and provided:

If any employee is absent for cause he must notify his foreman or the company nurse. Excessive tardiness is just as damaging as being absent. The company cannot condone either excessive absenteeism or tardiness. Any violation to this rule will be cause for dismissal.

On November 16, 1968, a successor plant superintendent posted new rules which required absences to be reported to the foreman or company nurse by 8:30 A.M. of the same day. To have an

---

* Senior District Judge Campbell of the Northern District of Illinois, Eastern Division, is sitting by designation.

absence of tardiness excused, the employee on reporting to work was required to present "proof or information" to his foreman for consideration.

Employees were warned that unexcused absences or tardiness would subject them to discipline and eventual discharge.

The Board found, however, that enforcement was lax. Excuse requests were often oral, by telephone to the night watchman or timekeeper, or overlooked entirely. Similarly there was no consistent observation of the rule on seeking advance permission from the foreman for expected absences, early departures or late arrivals. "Proof of information" when presented was seldom in writing. Each case was handled on an individual basis. Disciplinary steps ranged from verbal warnings to discharge. Murphy asserts that it was always intended that the rules be enforced.

By May or June 1969, absenteeism and tardiness were deemed a substantial cause of decrease in production and Plant Superintendent Lindquist on August 15, 1969, issued a new statement of rules under which employees were not excused for absence or tardiness unless and until within two days they submitted a completed written statement which could be on a form obtainable from the foreman. Murphy says that the form was offered as a convenience and was not obligatory. No such forms were in use earlier. Even where approval of the foreman had been secured, written excuses were not always accepted if submitted after two days' time. Murphy's explanation is that it was sought to avoid random enforcement dependent on the discretion of the foreman.

A regular seven-step procedure was established which Murphy argues was not entirely new but regularized general disciplinary measures always in use and represented, at worst, a mere procedural change. After two unexcused absences or tardiness in a 3-month period, a note was sent from the plant superintendent to the foreman who advised the employee of his violation. A third unexcused absence or tardiness brought a similar note and oral warning. A fourth violation brought a written warning from the foreman. A fifth meant a 2-day lay-off and a sixth, a 3-day lay-off. A seventh violation resulted in discharge. Enforcement of this procedure was strict.

The current agreement provided that employees otherwise qualified would receive holiday pay if they worked the last scheduled day prior to a holiday and the next scheduled work day after the holiday. Employees absent on those days because of regular scheduled vacations, lay-offs starting not more than one month prior to the holiday, bona fide illness and industrial injuries (starting not more than 30 days prior to the holiday) jury duty, subpoena as a witness or conditions beyond the employee's control, were to receive holiday pay if otherwise qualified.

The Board found that four employees absent during part of the qualifying days for Labor Day 1969 had excuses which would qualify them for holiday pay. There was testimony from which the Board could have concluded that some informal oral notification had been received which would have met Murphy's requirements for excused absences prior to August 15, 1969. Their absences were not considered excused and the four were denied holiday pay.

Murphy contends that the work rule was irrelevant here. The four were absent all or part of the day before or after the holiday and did not show, according to Murphy, that the absence fell within the classifications of the contract. However, the contract did not require that such excuses be in writing. Murphy asserts, for example, that Tom Gertz's reason for absence of two hours to take a pre-marital blood test did not qualify as an excuse under the contract, that as to Ronald Wind and Robert Hoots, Murphy is still unaware of the

reason for their absence as neither was called to testify, and that Tom Bell, who also did not testify, provided no excuse at all until, at the hearing, it was alleged he was at an induction center, a fact which Murphy feels was never proved. However, documentary exhibits from which Plant Superintendent Lindquist testified showed a notation "Draft Board" which he said might have reached the time keeper through gossip and been put on the daily report. Similarly Mr. Gertz testified that he discussed leaving early with his foreman and that, pursuant to instruction from the foreman, he brought back a doctor's statement (an exhibit at the hearing) which he showed to the foreman. He testified that this was the only time he could arrange to have this test.

Murphy argues that the Board erred in its findings of fact giving undue significance to the testimony of Union witnesses, particularly Union Committeeman Harold Blumke, who testified to conversations heard, for example. Murphy points out that Mr. Blumke and Shop Chairman Charles Cupertino had no personal knowledge of the alleged hospitalization of Mr. Wind, never saw the subpoena allegedly served on Mr. Hoots or any evidence as to Mr. Bell's required appearance at an induction center. As Murphy furnishes hospitalization insurance, Murphy finds it incredible that Mr. Wind should pay any charges that might have occurred in connection with this hospitalization. According to the witness to a conversation between Mr. Wind's uncle and George Cornwall, assistant to the Secretary of Murphy, Mr. Wind had been in an accident about a year before, necessitating use of steel pins or plates and the uncle advised Mr. Cornwall that on the day in question these would be removed at the hospital. Mr. Cornwall testified that he had no recollection of such a conversation. He testified that holiday pay was determined as always without reference to the work rules and that no information was submitted as to these four men from which Murphy could have determined their qualification under the contract.

The Board found that the four had orally advised Murphy of their reasons and that according to Superintendent Linquist's standards each would have qualified for holiday pay had the excuses been submitted in writing pursuant to the rule.

The Union submitted a grievance but Murphy asserted this not to be a grievable matter under the agreement. The Union had also tried to bargain the new rule, but Murphy refused to discuss it, considering it to be covered by the provision for reservation of management functions.

Murphy continued to refuse to bargain over these rules but asserts that it is acting in complete good faith. It is Murphy's view that the August 15, 1969, rules represented only a clarification and re-emphasis of existing policy and practice, that written proof had been required in the past and that uniformity of practice was created and past laxities corrected as permitted by Administrative Decision No. 11875, CCH NLRB 18,527 (1962), for a long established procedure never challenged by the Union, and that the Board's Order circumvents an applicable agreement reserving management functions except as expressly limited by the agreement. Murphy feels it significant that the contract negotiated after the hearing in this case still includes no limitations on Murphy's prerogative in the area of work rules.

Murphy draws an analogy from the holding in NLRB v. Hilton Mobile Homes, 8 Cir., 1967, 387 F.2d 7, 12, where the company's right to particularize work rules was upheld even though in that case the company had in the past negotiated work rules. Hilton unilaterally promulgated a rule prohibiting employees from taking company-owned tool boxes home. The Court held this was a particularization of an earlier rule pro-

hibiting removal from the plant of any company-owned property. The Court also held that the tool-box rule was not a condition of employment and thus a mandatory subject of bargaining. In that case the Court also found substantial evidence to support a holding that the parties had bargained to an impasse before the rule was promulgated.

The Board in the case before us decided that the 1969 rules and the procedures for their enforcement were more than clarification of rules existing when the current agreement was made.

There was evidence to support a finding that employees were not previously required to submit explanations in writing, certainly not in so formal a fashion that forms were made available for that purpose. There was no set time limit for submission of the excuses, nor was there a set quota with a formalized seven-step procedure leading to discharge. Murphy did make substantial changes in its rules and practices affecting tenure and conditions of employment. NLRB v. Miller Brewing Co., 9 Cir., 1969, 408 F.2d 12, 15–16; King Radio Corp. v. NLRB, 10 Cir., 1969, 398 F.2d 14, 17.

The management functions clause makes no reference to rules on absence or tardiness. Any waiver of the Union's right to bargain about conditions of employment must be "clear and unmistakable." General Electric Co. v. NLRB, 4 Cir., 1969, 414 F.2d 918, 923 and cases there cited, cert. den. 396 U.S. 1005, 90 S.Ct. 557, 24 L.Ed.2d 496. Failure to raise a challenge has been held insufficient to constitute a waiver. Armstrong Cork Co. v. NLRB, 5 Cir., 1954, 211 F.2d 843, 848; General Telephone Co. of Florida v. NLRB, 5 Cir., 1964, 337 F.2d 452, 454.

We conclude that the petition for review must be denied and the Board's Order granted enforcement.

Enforcement granted.