[No. 3618–9–III.   Division Three.   April 28, 1981.]

MEAT CUTTERS LOCAL NO. 494, ET AL, *Appellants,* v. ROSAUER'S SUPER MARKETS, INC., *Respondent.*

---

*Carl Maxey* and *Fredrickson, Maxey, Bell & Stiley,* for

appellants.

*George Kain* and *Kain & Snow,* for respondent.

GREEN, J.—Meat Cutters Local No. 494 (Meat Cutters) appeals from a dismissal of its petition against Rosauer's Super Markets, Inc., for specific performance of a collective bargaining agreement providing for arbitration. The sole issue is whether the agreement precludes arbitration of an appearance standards code concerning facial hair adopted by Rosauer's 30 days after collective bargaining was concluded. We reverse.

On January 5, 1979, Rosauer's and Meat Cutters executed a collective bargaining agreement for a term ending September 12, 1981. On February 5, all of Rosauer's store managers were informed in writing that although appearance standards regarding facial hair had not previously been clearly defined or enforced, it had become necessary to establish "what we, as a company, feel presents the best appearance to our customers" and after March 1, "No one should be allowed to work as long as they have a beard." Ronald Scott, a meat cutter employed by Rosauer's and a member of the union bargaining team, was informed by his store supervisor that he would have to remove his beard. He had been employed by Rosauer's for about 3 years and had worn a beard for the past year, including the period during which he represented the union in bargaining for the present collective bargaining agreement. Mr. Scott consulted with Meat Cutters' bargaining representative who, in turn, requested the company's president to reconsider the decision. This request was denied. Meat Cutters then requested arbitration and Rosauer's failed to respond.

Meat Cutters then filed this petition to require arbitration and moved for a temporary restraining order to prevent enforcement of the appearance standards until the petition was resolved. The temporary order was entered, but the court later refused to order arbitration of the dispute. The court reasoned that arbitration was limited to

interpretation of the terms in the collective bargaining agreement. Since the agreement did not contain a provision relating to facial hair, the court concluded the dispute was not subject to arbitration but was reserved to Rosauer's management discretion. Accordingly, Meat Cutters' petition was dismissed, resulting in this appeal.

Meat Cutters argues the court erred in refusing to order arbitration because: (1) Custom and usage of the industry, past practices of the shop, and the parties' bargaining history are an implied part of the collective bargaining agreement; since employees were allowed to wear beards at the time the agreement was executed and Mr. Scott had worn a beard during the contract negotiations, appearance standards regarding facial hair were an implied part of the contract, and Rosauer's was obligated to arbitrate the dispute; (2) the court interpreted the contract when it determined the matter was reserved to Rosauer's management discretion—a function belonging to the arbitrator;[1] and (3) the presence of an all–encompassing no–strike clause in the agreement evidences the parties' intent to arbitrate all disputes unless specifically excluded, and there is no specific exclusion here.

The issues raised must be considered in light of the principles governing labor–management arbitration discussed in the "Steelworkers' Trilogy": *United Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 4 L. Ed. 2d 1403, 80 S. Ct. 1343 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 4 L. Ed. 2d 1424, 80 S. Ct. 1358 (1960). The obligation to submit an issue is wholly contractual and arbitrability of a dispute depends upon the terms

---

[1]In addition to Meat Cutters' argument that this dispute requires interpretation of the management rights clause, discussed above, it contends Rosauer's actions arguably violate and would require interpretation of provisions relating to discharge, temporary layoffs, seniority and discrimination. While this contention may have merit, we decline to discuss it because it appears to have been raised for the first time on appeal.

of the agreement.

> a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."

*Atkinson v. Sinclair Ref. Co.,* 370 U.S. 238, 241, 8 L. Ed. 2d 462, 82 S. Ct. 1318, 1320–21 (1962), quoting *United Steelworkers v. Warrior & Gulf Navigation Co., supra.* In an action to compel arbitration, the threshold question of arbitrability is for the court. The court has no concern with the merits of the controversy when construing the agreement. The sole inquiry is whether the parties bound themselves to arbitrate the particular dispute. If the dispute can fairly be said to involve an interpretation of the agreement, the inquiry is at an end and the proper interpretation is for the arbitrator. The precise scope of the court's inquiry is stated in *American Mfg. Co.,* at pages 567–68:

> The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is *making a claim which on its face is governed by the contract.* Whether the moving party is right or wrong is a question of contract interpretation for the arbitrator. . . .
>
> The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware.

(Italics ours.)

In *Warrior, supra* at 578–83, it was noted that the rules governing interpretation of an arbitration clause in a collective bargaining agreement differ from those applicable to commercial contracts.

> In the commercial case, arbitration is the substitute for litigation. Here arbitration is the substitute for industrial strife. Since arbitration of labor disputes has quite dif-

ferent functions from arbitration under an ordinary commercial agreement, the hostility evinced by courts toward arbitration of commercial agreements has no place here. For arbitration of labor disputes under collective bargaining agreements is part and parcel of the collective bargaining process itself.

. . .

*Apart from matters that the parties specifically exclude,* all of the questions on which the parties disagree must therefore come within the scope of the grievance and arbitration provisions of the collective agreement. . . .

. . .

. . . An order to arbitrate the particular grievance should not be denied unless it may be said *with positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. *Doubts should be resolved in favor of coverage.*

(Italics ours.)

Rosauer's contends the court correctly dismissed Meat Cutters' petition based on several provisions of the collective bargaining agreement. Section 6 states:

(k) During the term and course of this Agreement, no collective bargaining shall be had upon any issue covered by this agreement, or upon any issue which has been disposed of during the course of the collective bargaining which resulted in the consummation of this agreement, or upon any matter not expressly set forth in this Agreement. Nothing herein shall preclude the parties by mutual agreement from discussing problems which may arise under the contract.

(1) Except as herein clearly and explicitly limited in the express terms of this agreement the right of the company in all respects to manage its business shall be unimpaired.

Section 9, which outlines the arbitration procedure, provides:

(a) Should there be a dispute over the *interpretation of the terms* of this Agreement, the same shall be adjusted in the following manner:

. . .

(c) It is distinctly understood and agreed that the

Board of Arbitration is not vested with the power to change, alter or modify this Agreement in any of its parts. *The arbitrator shall not decide on any subject, the condition of which is not specifically treated in this contract, but only on the contractual obligations that are specifically provided in this Agreement.*

(Italics ours.) Rosauer's argues that since there is no express provision covering facial hair, this dispute is not arbitrable. Although their argument is persuasive, we are compelled to disagree by what we consider to be the underlying message of the "Steelworkers' Trilogy."

First, past practices and bargaining history should be an implied part of the bargaining agreement. Both may be considered by the arbitrator in resolving a dispute. This is implicit in *Warrior, supra* at pages 579–81, where the court noted the difficulty, if not the impossibility, of explicitly covering every potential issue that may arise during the period of a collective bargaining agreement. The effort to do so is often undesirable:

The collective agreement covers the whole employment relationship. It calls into being a new common law—the common law of a particular industry or of a particular plant. As one observer has put it:

". . . [I]t is not unqualifiedly true that a collective-bargaining agreement is simply a document by which the union and employees have imposed upon management limited, express restrictions of its otherwise absolute right to manage the enterprise, so that an employee's claim must fail unless he can point to a specific contract provision upon which the claim is founded. There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages. Within the sphere of collective bargaining, the institutional characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledged so plain a

need unless they stated a contrary rule in plain words."
. . . Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties. The processing of disputes through the grievance machinery is actually a vehicle by which meaning and content are given to the collective bargaining agreement.

Based on *Warrior,* Meat Cutters' claim in this case that because employees were allowed to wear beards they should continue to have that right, is a question for the arbitrator.

■ Secondly, whether the appearance code is within Rosauer's management discretion requires interpretation of the contract. In the *Warrior* case, the court held that whether a dispute was within management's discretion under an agreement was a matter of interpretation for the arbitrator. There, at page 576, the agreement provided:

[M]atters which are strictly a function of management shall not be subject to arbitration under this section.

The court, at page 584, stated:

"Strictly a function of management" might be thought to refer to any practice of management in which, under particular circumstances prescribed by the agreement, it is permitted to indulge. But if courts, in order to determine arbitrability, were allowed to determine what is permitted and what is not, the arbitration clause would be swallowed up by the exception. Every grievance in a sense involves a claim that management has violated some provision of the agreement.

As in *Warrior,* the dispute here is not specifically excluded and whether the appearance code is within the management function clause requires interpretation; therefore, the dispute is subject to arbitration.

Rosauer's contends the *Warrior* case is distinguishable because the arbitration clause was much broader than the one in this case.[2] It relies upon cases where arbitration

---

[2]The collective bargaining agreement in the *Warrior* case, provided for arbitration:

clauses similar to the one here have been construed to preclude arbitration. *Boeing Co. v. IUAW,* 231 F. Supp. 930 (E.D. Pa. 1964); *Flintkote Co. v. Textile Workers,* 243 F. Supp. 205 (D.N.J. 1965); *District 50, UMW v. Matthiessen & Hegeler Zinc Co.,* 291 F. Supp. 578 (N.D. W. Va. 1968); *Affiliated Food Distribs., Inc. v. Local 229, Int'l Bhd. of Teamsters,* 483 F.2d 418 (3d Cir. 1973); *Local 210, Int'l Printing Pressmen v. Times–World Corp.,* 381 F. Supp. 149 (N.D. Va. 1974). While these cases may have limited the holding in *Warrior,* they are not controlling.

More recently, the Supreme Court addressed the arbitration question again and reaffirmed the underlying philosophy of the "Steelworkers' Trilogy" in *Nolde Bros., Inc. v. Local 358, Bakery & Confectionery Workers,* 430 U.S. 243, 51 L. Ed. 2d 300, 97 S. Ct. 1067 (1977). There, the court ordered arbitration of a dispute arising after the collective bargaining agreement terminated because the agreement did not specifically state the dispute must arise during the contract's term. Failure to exclude the dispute from arbitration led the court to conclude the parties intended arbitration. This conclusion was reached "[i]n order to effectuate . . . a strong presumption favoring arbitrability."

The parties must be deemed to have been conscious of this policy when they agree to resolve their contractual differences through arbitration. Consequently, the parties' failure to exclude from arbitrability contract disputes arising after termination, far from manifesting an intent to have arbitration obligations cease with the agreement, affords a basis for concluding that they intended to arbitrate all grievances arising out of the contractual relationship. In short, where the dispute is over a provision of the expired agreement, the presumptions favoring arbitrability must be negated expressly or by clear implication.

*Nolde Brothers, supra* at 255. In light of the strong presumption for arbitration reiterated in *Nolde Brothers,*

---

"'Should differences arise between the Company and the Union or its members employed by the Company as to the meaning and application of the provisions of this Agreement, or should any local trouble of any kind arise, . . .'"

*supra,* we are compelled to conclude that the underlying philosophy of the *Warrior* case remains controlling.[3]

Here, Meat Cutters' grievance alleged the change in appearance standards violated the agreement because it was not a proper exercise of management powers in light of past history and bargaining practices. Resolution of this grievance requires an interpretation of the agreement. "Interpretation" of the agreement was expressly made the subject of arbitration. If we hold, as Rosauer's contends, that the dispute is not arbitrable, we would be concluding that the reservation of management powers in the agreement is without qualification. We decline to "become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." *Warrior, supra* at 585. Therefore, the court erred in determining that the dispute was not subject to arbitration.

This result is buttressed by section 9 of the agreement which provides there shall be no strikes "unless the other party to the Agreement is refusing to comply with the final decision of an arbitrator reached in accordance with the provisions of this Agreement." Arbitration has been held to be the "quid pro quo" for a no–strike clause. Where there is no exception in the no–strike clause, none should be read into the arbitration clause. *United Steelworkers v. American Mfg. Co., supra* at 567.

---

[3]Meat Cutters cite several cases reaching the same conclusion as we do. *See Local 1912, Int'l Ass'n of Machinists v. United States Potash Co.,* 270 F.2d 496 (10th Cir. 1959); *Local 1401, Retail Clerks Int'l Ass'n v. Woodman's Food Market, Inc.,* 371 F.2d 199 (7th Cir. 1966); *Murphy Diesel Co. v. NLRB,* 454 F.2d 303 (7th Cir. 1971); *Mobil Oil Corp. v. Local 8–766, Oil, Chem. & Atomic Workers,* 600 F.2d 322 (1st Cir. 1979); *Orphan v. Furnco Constr. Corp.,* 325 F. Supp. 1220 (N.D. Ill. 1971); *Maryland Tel. Union v. Chesapeake & Potomac Tel. Co.,* 187 F. Supp. 101 (D. Md. 1960). It serves no useful purpose to rationalize the plethora of cases on this subject. As was pointed out in *International Ass'n of Machinists v. Howmet Corp.,* 466 F.2d 1249 (9th Cir. 1972), the courts which have cited the trilogy have not given significance to the fact that the *Warrior* case included the words "should any local trouble of any kind arise." A review of the cases leads us to the same conclusion.

When, . . . an absolute no–strike clause is included in the agreement, then in a very real sense everything that management does is subject to the agreement, for either management is prohibited or limited in the action it takes, or if not, it is protected from interference by strikes.

*Warrior, supra* at 583. The parties are deemed to have drafted the collective bargaining agreement against the backdrop of the strong federal policy favoring arbitration.

In light of this policy, we reverse the court's denial of the Meat Cutters' petition and motion for arbitration.

McINTURFF, C.J., concurs.

McINTURFF, C.J. (concurring)—In addition to the persuasive philosophy of the "Steelworkers' Trilogy"—that arbitration should be favored in an effort to settle the myriad labor–management problems associated with contract negotiations—the common law of the shop also deserves prominent consideration. The court in *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960), determined the common law of the shop was an aspect of the employment relationship covered by the collective bargaining agreement.

As stated by the majority, Mr. Scott, without the objection or apparent concern of management, had worn a beard a year prior to and during the collective bargaining process. It seems unfair to allegedly negotiate in good faith during an extended period of time, conclude an agreement and 30 days later enact grooming standards which preclude facial hair existing before and during collective bargaining.

At a minimum, the issue of specific grooming standards is obviously arguable. Therefore, broad application of arbitration clauses is required to "uphold the arbitrability of issues which are *even arguably* covered by the collective bargaining agreement." (Italics mine.) *International Ass'n of Machinists v. Howmet Corp.*, 466 F.2d 1249, 1253 (9th Cir. 1972).

MUNSON J. (dissenting)—We read the same cases, apply them to the same facts, but I reach an opposite result. There is a strong public policy, both in the federal and state labor law, that parties to a collective bargaining agreement which contains an arbitration clause will submit their disputes and controversies to that forum. *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960); *Retail Store Employees Local 631 v. Totem Sales, Inc.*, 20 Wn. App. 278, 281–82, 579 P.2d 1019 (1978). This is particularly true when there is a no–strike clause in the collective bargaining agreement, along with an arbitration clause. *United Steelworkers v. Warrior & Gulf Navigation Co., supra* at 583. Two exceptions to this general rule are: (1) either an express provision excluding a particular grievance from arbitration or (2) the most forceful evidence of a purpose to exclude the claim from arbitration. *United Steelworkers v. Warrior & Gulf Navigation Co., supra; International Ass'n of Machinists v. Howmet Corp.*, 466 F.2d 1249 (9th Cir. 1972). The cases are legion setting forth these principles. Rather than cite them extensively, those cases cited epitomize the rule.

This collective bargaining agreement sets forth the grievance procedure in section 6. As noted by the majority, it does not specifically exclude particular grievances. Section 6(1), setting forth the grievance procedure, states:

(1) Except as herein clearly and explicitly limited in the express terms of this agreement the right of the company in all respects to manage its business shall be unimpaired.

Section 9 provides an arbitration procedure for "a dispute over the interpretation of the terms of this Agreement," and goes on to state:

(c) It is distinctly understood and agreed that the Board of Arbitration is not vested with the power to change, alter or modify this Agreement in any of its parts. *The arbitrator shall not decide on any subject, the condition of which is not specifically treated in this*

*contract, but only on the contractual obligations that are specifically provided in this Agreement.*

(Italics mine.)

Even though there is a policy for arbitration, parties are bound to arbitrate only those disputes which, under a fair construction of the collective bargaining agreement, they have bound themselves to arbitrate. As stated in *Atkinson v. Sinclair Ref. Co.,* 370 U.S. 238, 241, 8 L. Ed. 2d 462, 82 S. Ct. 1318, 1320 (1962): "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit."

The collective bargaining agreement which these parties signed does not cover a grooming code. Thus, the arbitrator has no power to consider such a matter merely because there is a grievance. Under this collective bargaining agreement, the arbitrator can only decide issues specifically provided therein. *Flintkote Co. v. Textile Workers,* 243 F. Supp. 205 (D.N.J. 1965); *Boeing Co. v. IUAW,* 231 F. Supp. 930 (E.D. Pa. 1964). This court cannot supplement the parties' agreement and include within it something the parties did not include. *Local 210, Int'l Printing Pressmen v. Times–World Corp.,* 381 F. Supp. 149 (W.D. Va. 1974). Thus, I would find that the parties have forcefully excluded this issue from their agreement; that exclusion is clear and unmistakable because a grooming code was not included within the agreement. *United Steelworkers v. Warrior & Gulf Navigation Co., supra; Murphy Diesel Co. v. NLRB,* 454 F.2d 303 (7th Cir. 1971); *International Ass'n of Machinists v. Howmet Corp., supra.*

The appellants seek in this court to bring this dispute within the discharge provision of the agreement and also raise a civil rights violation under United States Civil Rights Act of 1964, Title 7, 42 U.S.C. § 2000e (1976). None of these matters were presented at the trial court and should not be considered on appeal.

While I find arbitration is not applicable in this case, it is not the sole remedy available to Mr. Scott. I believe he has a right to proceed with his claim in a different forum. I do

conclude that neither he nor his representative have a right to proceed to arbitration on this issue because it is not included within the collective bargaining agreement.

Reconsideration denied June 30, 1981.

Review denied by Supreme Court September 25, 1981.