**CAST OPTICS CORP., a corporation of the State of New Jersey, Petitioner,**

v.

**TEXTILE WORKERS UNION OF AMER-ICA et al., Respondents.**

**No. 70 Civ. 1349.**

United States District Court,
S. D. New York.

May 11, 1970.

Joseph N. Tauber, New York City, for petitioner.

Joel Ronald Ax, New York City, for respondent Textile Workers.

METZNER, District Judge:

Cast Optics Corp. has moved for a preliminary injunction in this action against the Textile Workers Union of America (TWUA), the American Arbitration Ass'n and Mr. Benjamin Wolfe, an arbitrator for the association. The company seeks to enjoin the arbitrator from rendering a decision in a labor dispute between it and the TWUA.

On November 7, 1966 the company executed a three-year collective bargaining agreement with the TWUA which recognized the union as exclusive bargaining representative for most of the plant's

employees. The agreement contained an arbitration and no-strike provision, the pertinent part of which provides:

"If any disputes, differences or controversies are not settled satisfactorily between the parties, the matter shall be referred for final decision and determination to an Impartial Arbitrator to be agreed upon by the parties. If the parties are unable to agree on an arbitrator within three (3) days after the request for arbitration, either party may refer the question to either the State Mediation & Conciliation Service or the American Arbitration Association, under whose rules an arbitrator shall be chosen. The parties expressly waive statutory or other requirements that the arbitrator take an oath before hearing and deciding cases. His decision or award shall be final and binding on both parties. The expenses incident to the services of the arbitrator shall be paid jointly by the Employer and the Union.

"All grievances shall be filed within five (5) days after they occur or they shall be deemed to be waived.

"D. If the Employer is not in default in complying with the decision of the arbitrator, the Union shall not engage in any strike, picketing, boycott or walk-out. If the Union is not in default in complying with the decision of the arbitrator, the Employer shall not engage in any lockout."

In early May of 1969, six months before the contract was due to expire, the union made certain "contractual proposals" to the company and asked for immediate discussions of them. Later in May the company tried to reassign an employee from one department to another and discharged him when he refused to move. On Friday, May 23, the employees appeared for work, but refused to perform any of their duties, and on Monday, May 26, the company excluded from the plant all employees except two or three who promised to perform their duties if admitted. But by the following Thursday, the deadline set by the company, all employees had agreed to return to work. It is unclear whether this "job action" was union-induced or not, and whether it was meant solely to protest the discharge of an employee or also to support the "contract proposals."

Thereafter the company treated the union as though it had forfeited its contractual position as exclusive bargaining agent of plant employees. Checkoff was discontinued, union welfare payments were withheld, the union representative was forbidden to enter the plant and a unilateral wage increase was granted by the company. The union responded to this by calling a strike for June 30, and the employees obeyed. The company discharged all of the strikers three days later. Apparently the strike is continuing and the company has hired an entire new corps of employees.

On October 2, 1969 counsel for the union wrote to the company indicating its intent to initiate arbitration proceedings concerning the refusal of the company to recognize it. The company's counsel replied that the dispute was not arbitrable for several reasons and insisted that the union sue to compel arbitration. Instead the union contacted the American Arbitration Ass'n, which made a determination that arbitrable issues existed. The company then participated in the choice of arbitrators and in the arbitration proceeding itself, and even filed a list of its own grievances with the association, all the while protesting that it considered the issues nonarbitrable and that it was appearing solely to protect its rights. Several months after the commencement of the arbitration proceedings, the company instituted this action to enjoin the arbitrator from proceeding any further.

The petitioner does not make the usual argument that this particular dispute is beyond the compass of the arbitration clause of the contract, but instead offers five other reasons why the dispute is not arbitrable. On the record as it stands, none of these reasons has any apparent merit.

■■ In the first place the company contends that the union's strike in May was a material breach of the contract's no-strike clause which entitled the company to repudiate the entire contract, including its arbitration provisions. This contention is unpersuasive. The violation by the union of a no-strike provision, if indeed that occurred here, does not automatically entitle the company to repudiate its agreement. The company cannot do so unless the conduct of the union amounted to a repudiation of the arbitration clause, or unless the company's duty to arbitrate is expressly conditioned on the absence of strikes. The arbitration clause of this contract is not subject to any such conditions. The issues of whether the union evinced an intent to repudiate the agreement, or whether they violated it at all, must be determined in the first instance by the arbitrator. Local Union No. 721, United Packinghouse Workers v. Needham Packing Co., 376 U.S. 247, 84 S.Ct. 773, 11 L.Ed.2d 680 (1964); Drake Bakeries Inc. v. Local 50, American Bakery Workers, 370 U.S. 254, 82 S.Ct. 1346, 8 L.Ed. 2d 474 (1962); Ice Cream Drivers v. Borden, Inc., 312 F.Supp. 549 (S.D.N.Y. 1970); *cf.* Minkoff v. Scranton Frocks, Inc., 181 F.Supp. 542, 545–546 (S.D.N. Y.), aff'd on opinion below, 279 F.2d 115 (2d Cir. 1960).

■ Second, the company contends that since the NLRB has primary jurisdiction over this suit and is exercising its jurisdiction, arbitration must cease. The Supreme Court has permitted arbitration of disputes which have been claimed to be within the jurisdiction of the NLRB. Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). In *Carey* the NLRB had not yet exercised its jurisdiction in any way when the case came before the Supreme Court, whereas a trial examiner of the agency has already entered his recommended decision in the dispute between the company and TWUA. This difference does not appear controlling to me in view of the long discussion in *Carey*. There the

Court spoke of the weight the NLRB should give to an arbitrator's decision and vice versa, which indicates that the *Carey* court anticipated simultaneous proceedings and did not intend to forbid them. Most courts have permitted arbitration to go forward even after the NLRB has instituted proceedings. See New Orleans Typographical Union v. NLRB, 368 F.2d 755, 766–767 (5th Cir. 1966); Smith & Jones, The Impact of the Emerging Federal Law of Grievance Arbitration on Judges, Arbitrators, and Parties, 52 Va.L.Rev. 831, 865 n. 107 (1966).

■ Third, it is argued that the failure of the union to file its complaint within five days of the acts complained of amounted to a waiver of arbitration. This is a question of procedural arbitrability which only the arbitrator can decide. John Wiley & Sons v. Livingston, 376 U.S. 543, 555–559 n. 11, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964).

■ Fourth, the company contends that the union was guilty of laches in waiting three months after the strike before invoking arbitration. Assuming arguendo that this is not a procedural matter for the arbitrator, the claim is without merit. ITT World Communications, Inc. v. Communications Workers, 422 F.2d 77 (2d Cir. 1970).

■ Finally, it is contended that the arbitrator lacks jurisdiction to proceed because the union did not sue to compel arbitration as required by the United States Arbitration Act, 9 U.S.C. § 4. Apparently this circuit is of the view that a collective bargaining agreement is a "contract of employment" beyond the coverage of that act. 9 U.S.C. § 1; Metal Prods. Workers v. Torrington Co., 358 F.2d 103, 106 (2d Cir. 1966); Minkoff v. Scranton Frocks, Inc., *supra*, 181 F.Supp. at 545; see Textile Workers v. Lincoln Mills, 353 U.S. 448, 466, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) (Frankfurter, J., dissenting). Of course, suits to compel arbitration of a labor dispute can be brought under § 301 of the Labor Management Relations Act, 1947, 29 U.S.C. §

185. General Elec. Co. v. Local 205 United Elec. Workers, 353 U.S. 547, 77 S.Ct. 921, 1 L.Ed.2d 1028 (1957). However, when the company is participating fully in the arbitration proceedings, it would be senseless to make the union sue for specific performance.

Petitioner has failed to show any basis for the issuance of a preliminary injunction.

Motion denied. So ordered.