**LODGE 2036, INTERNATIONAL ASSO- CIATION OF MACHINISTS AND AEROSPACE WORKERS (IAM–AFL– CIO), a non-incorporated association, Plaintiff,**

v.

**H. D. HUDSON MANUFACTURING COMPANY, a corporation, Defendant.**

**No. 3–71–Civ–177.**

United States District Court,
D. Minnesota,
Third Division.

Sept. 21, 1971.

362

Peterson, Bell & Converse, Willard L. Converse, St. Paul, Minn., for plaintiff.

Comaford, Fassett, Clarkson & Lewis, Ralph H. Comaford, Minneapolis, Minn., for defendant.

## MEMORANDUM AND ORDER

DEVITT, Chief Judge.

This matter is before the court on cross motions for summary judgment. The action, brought under the Labor-

Management Relations Act, with jurisdiction based on 29 U.S.C. § 185, alleges violations of the collective bargaining agreement between the parties.[1]

The issue involved is whether the dispute between the parties is or is not one subject to arbitration. A secondary issue is if plaintiff has sought arbitration in a timely manner under the terms of the collective bargaining contract.

Prior to the effective date of the current agreement, defendant's employees contributed $3.36 monthly for single coverage or $8.59 monthly for family coverage under defendant's hospital and medical welfare benefit program.[2]

Under the terms of the new agreement the employees continued to pay the amounts specified until there was an increase in the cost of the program at which time that increase would be borne by increased employee contributions.[3]

In late January 1971, defendant was notified by Benefit Trust Life Insurance Company, the insurance carrier, that the premiums were to be increased effective February 1, 1971. The defendant proceeded to deduct additional amounts from employee's paychecks on January 29, 1971.[4]

It is plaintiff's position that this increase in premiums is not one for which the employees are obligated under the agreement as it is not due to "rate-claim" experience under the new contract, but is based on the ratio of rates to claims during a period prior to the effective date of the new agreement. In the alternative plaintiff contends that the increase in premiums resulted from bad faith bargaining on the part of the company.

1. Section 185 reads: "Suits for violation of contracts between an employer and a labor organization * * * may be brought in any district court of the United States having jurisdiction of the parties, * * *"

2. Defendant contributed $6.11 for each single subscriber and $12.31 for each family coverage. The agreement which is the basis of this dispute became effective December 18, 1970.

3. Article XIII, Section 3 of the new agreement provides; "Any increase in the cost of the insurance program shall be paid by employees."

4. The increase totalled $1.37 for single coverage and $3.43 for family coverage. The insurance carrier justified the increase to defendant on the grounds that during the period July 1, 1969–October 1, 1970 the ratio of claims to premiums at the Hastings plant was 140%.

Plaintiff argues that an increase in premiums based on experiences under the old agreement constitutes an arbitrable dispute. Plaintiff interprets the agreement to require any such increases to be based on experiences occurring after the effective date of the new agreement.[5]

Although where all parties have agreed to submit issues of contract interpretation to an arbitrator, the court's function is limited to merely ascertaining whether the party seeking arbitration is making a claim which upon its face is governed by the contract. United Steelworkers of America v. Amercan Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), the threshold question of whether or not the parties are bound to arbitrate, as well as what issues must be arbitrated is a matter to be determined by the court on the basis of the contract entered into. John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); United Steelworkers of America, A.F.L.–C.I. O. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Arbitration remains essentially consensual and the extent of the arbitrator's jurisdiction is determined by the collective bargaining agreement. United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960); District 50, United Mine Workers of America v. Chris-Craft Corp., 385 F.2d 946 (6th Cir. 1967).

Turning to the agreement here, it is difficult to find support for plaintiff's position.

Article XIII, Section 3 of the agreement states; "Any increase in the cost of the insurance program shall be paid by employees." The agreement on its face does not limit this provision in any way. In addition, Section 1 of this article provides; "The insurance and welfare program for employees and their dependents as set forth in the employee's explanatory booklet will remain in effect for the duration of this agreement * * *." This appears to indicate the existence of a continuing program, not the substitution of a new program under the new agreement. Finally, Paragraph 4 of the Memorandum of Agreement which led to the December 1970 contract reads; "The Company will pay the initial increase in premium cost for the following increases in benefits (the language in the Basic Agreement to remain unchanged). The new benefit levels to become effective January 1, 1971."

All these seem to indicate that the provision in the collective bargaining agreement is clear and requires the employees to bear any increase in the cost of the program. It would appear that an arbitrator would have nothing to interpret under this provision.

Plaintiff's contention that the increase in premiums is a result of defendant's bad faith in bargaining is without any support in the pleadings, affidavits, or any material submitted. In the affidavit of Edward M. Thiel, Plant Manager of the Hastings plant, affiant states that defendant was notified in late January of 1971 that the premiums would be increased. This date is subsequent to the bargaining sessions leading to the new agreement and is subsequent to the agreement itself.[6]

5. A grievance was filed on January 29, 1971. After a series of meetings and letters, the defendant informed plaintiff on May 18, 1971 that it did not consider the dispute to be a grievance which might be arbitrated since it did not relate to any obligation of the company under the agreement. Further, the company informed plaintiff that it considered the meetings held February 2, 1971, and March 18, 1971 to be step (d) meetings under Article XII of the agreement and since the plaintiff had not appealed the company's answer to arbitration within 10 days, the plaintiff had lost its right to arbitrate the issue.

6. Affidavit of Edward M. Thiel, dated August 19, 1971, filed in support of defendant's motion for summary judgment.

**364**

In light of the conclusion that there is here no arbitrable issue, I reach no decision on whether the submission of the dispute to arbitration was timely under the terms of the agreement.

Defendant's motion for summary judgment is granted.

