DEPARTMENT STORE, PACKAGE, GROCERY, PAPER HOUSE, LIQUOR AND MEAT DRIVERS, HELPERS AND WAREHOUSEMEN, LOCAL UNION NO. 955, an affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America, Plaintiff,

v.

BERMINGHAM–PROSSER PAPER COMPANY, Defendant.

No. 73 CV 374–W 4.

United States District Court, W. D. Missouri, W. D.

Aug. 13, 1973.

James G. Walsh, Jr., of Jolley, Walsh, Gordon & Staab, Kansas City, for plaintiff.

Lawrence M. Berkowitz of Stinson, Mag, Thomson, McEvers & Fizzell, Kansas City, for defendant.

FINDINGS, OPINION AND ORDER

ELMO B. HUNTER, District Judge.

On July 6, 1973, plaintiff filed its complaint in the above-styled cause seeking an order of the Court compelling arbitration of a dispute under a collective bargaining agreement. Jurisdiction of the action is founded under Section 301 of the National Labor Relations Act, 29 U.S.C. § 185.

The case was set for an expedited hearing and decision in view of plaintiff's claim that the matter is of an emergency nature. On July 21, 1973, in lieu of the full evidentiary hearing offered to the parties, the case was fully submitted upon a stipulation of the facts

and the presentation of a copy of the collective bargaining agreement.[1]

The Court adopts the stipulation filed July 20, 1973 and summarizes the findings of fact, as more fully set out in the stipulation, as follows:

(1). Plaintiff is a labor organization (union); defendant is an employer (company).

(2). On May 31, 1972 the above parties executed a collective bargaining agreement (exhibit 1) which is effective until June 1, 1975, subject to a reopener provision which provides, "the Union, by giving sixty (60) days written notice of intention to do so, may open this Agreement on June 1, 1973 for the purpose of negotiating with respect to hourly wage rates only".

(3). The Union timely filed the requisite notice to reopen the agreement for the purpose of negotiating hourly wage rates. (exhibit 2)

(4). Thereafter, the company and the union met, conferred and negotiated. At a negotiating session held on May 31, 1973 the company made a wage increase offer to the union, which offer the company contended was the maximum amount permissible under Federal (Pay Board) Cost of Living Council regulations for each of the remaining two years of the agreement. The union committee, at that time, believed the membership would expect to receive more than had been offered by the company and suggested that the membership might strike to get more. At this juncture, the union contended that it had the right to strike under the collective bargaining agreement in the furtherance of its wage demand and the company contended that it did not.

(5). The union members rejected the company's proposed wage increase.

(6). The union representative requested that the question concerning the union's right to strike under the agreement in furtherance of its wage demands be submitted to arbitration. The company attorney took the position that there was nothing to arbitrate under Article 13A of the agreement, and the union was precluded by the agreement from striking in furtherance of its wage demands.

(7). The union membership had previously voted to strike. However, after being informed of the company's position, and the fact that the Teamsters International Union would not sanction a strike as long as the question of whether the strike would be in breach of contract was unresolved, the membership voted to arbitrate the issue of whether a strike would violate the terms of the agreement. The attorney for the union then helped prepare a grievance report which was signed by a member of the union's negotiating committee.

(8). Pursuant to a presidential press release that indicated a 6½% increase in the wage scale would not be inconsistent with the stabilization program, the company offered to settle the wage negotiations on that basis. However, this offer was rejected by the union membership.

(9) In some other contracts containing reopeners, the union negotiated and had written into their

---

1. Exhibit 1. It should be noted that the parties agreed on the record that the crossed-out written figures on page 7 of the exhibit are properly excluded, and the crossed-out segment of the agreement on page 9 beginning with "strikes" and ending with "strike" is to be included as a proper part of the exhibit.

contracts specific language to the effect that anything in a no-strike clause or any other language in the contract to the contrary notwithstanding, the union shall have the right to strike to enforce its contract reopener demands.

The portions, of the collective bargaining agreement in controversy, and which are dispositive of the issues in this action, are Articles 12 and 13A. Article 12 reads:

Should any difference regarding the interpretation or application of any of the terms of this Agreement arise between an Employer and his employee, an honest effort shall be immediately made to adjust such differences in the following order:

First between the aggrieved employee, his steward and his employer

Second between a representative of the union and the employer. In the event the difference has not been adjusted within forty-eight (48) hours after being presented to the employer, the difference shall then be taken up

Third between the union and the employer's standing committee. If these parties cannot agree within five (5) days

Fourth the difference shall be referred to a committee to consist of three (3) representatives, one (1) to be selected by the union, one (1) selected by the employer and one (1) selected by these two representatives, to adjust the difference and while the matter is before the Committee pending the adjustment, there shall be no strike, slowdown or lockout and the decision of the Committee shall be final and binding . . . The arbitrators shall have no power to add to or subtract from or modify any of the terms of this Agreement.

Article 13A of the agreement provides:

During the term of this Agreement, the union agrees that it will not cause or permit its members to cause nor will any member of the union take part in any strike or activity which interferes with production of the employer. Neither the union nor any of its officers or representatives shall be held liable for any damages resulting from unauthorized or "wildcat" strikes not called, directed or ratified by them unless they fail to use their best efforts to bring about a cessation to any such unauthorized or "wildcat" strike. The employer may discharge any member of the union who violates any provision of this Article. The employer agrees that it will not lock out any of its employees during the time this Agreement is in force.

Plaintiff contends that the only issue before the Court is whether or not the "grievance" over the union's asserted right to strike in furtherance of its reopened wage demands is arbitrable. Plaintiff states that while there might be some room for debate as to whether the union is free to strike in furtherance of its wage demands, there can be no serious dispute as to whether that issue is arbitrable—under either the clear wording of Article 12 or the law. (Page 4 of plaintiff's brief). This position begs the question.

Since it is apparent that the term of the agreement extends until June 1, 1975, notwithstanding the reopener provision which applies solely to the negotiating of hourly wage rates [1], the no-strike clause is clear and unnecessary of any interpretation.

In view of the explicit wording of Article 13A, it can be said "with positive assurance that the arbitration clause is not susceptible to an interpretation that covers the asserted dispute" with all doubts resolved in favor of coverage. United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409

1. Article 9.

(1960); See also, United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960) and United Steelworkers of America v. Enterprise Wheel and Car Corp., 363 U.S. 593, 80 S.Ct. 1358, 4 L. Ed.2d 1424 (1960), commonly referred to as the Steelworker Trilogy. The Supreme Court in the three decisions emphasized the importance of arbitration as an instrument of federal policy for resolving disputes between labor and management and cautioned the lower courts against usurping the functions of the arbitrator. The Boy's Market, Inc. v. Retail Clerk's Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970).

 There is no question that under the proper circumstances a union can obtain specific performance of an employer's promise to arbitrate grievances. Textile Workers Union v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957). However, the arbitration clause cannot be analyzed without reference to other segments of the agreement especially where it provides that the arbitrators do not have the power to modify any of the terms of the contract. In this action the wording of the agreement clearly shows that the union's waiver of its right to strike (Art. 13A) was not the *quid pro quo* for an undertaking by the employer to submit grievance disputes for arbitration as was involved in *Textile Workers* and the *Boy's Market* cases, supra. This is not a situation where there is a no-strike agreement conditioned upon the arbitration of any resulting dispute. It cannot be said from the face of the agreement that the union bargained for the arbitrator's judgment in determining its right to strike in furtherance of any grievance, and for that reason adopted the no-strike clause as it now reads. In fact the wording of Article 13A is clear and unambiguous—no strike or activity interfering with the employer's production shall be engaged in during the term of the agreement. Therefore, in light of the above, it is clear that the dispute

over the union's right to strike does not involve an arbitrable issue. Lodge 2036, International Association of Machinists and Aerospace Workers v. Hudson Manufacturing Co., 331 F.Supp. 361 (D. Minn.1971).

In light of this finding it is unnecessary to meet defendant's contentions that the dispute is not "one arising between an employer and his employee", as provided in Article 12, and therefore not subject to the arbitration provisions, or that the grievance filed did not in any other way comport with the requirements set out in the collective bargaining agreement.

Accordingly, it is hereby ordered that plaintiff's complaint seeking an order compelling the defendant to arbitrate the afore-mentioned dispute, be, and it is hereby, dismissed. Costs in this action are to be taxed against plaintiff.

It is so ordered.