LOCAL 210, INTERNATIONAL PRINTING PRESSMEN AND ASSISTANTS' UNION, Plaintiff,

v.

TIMES–WORLD CORPORATION, Defendant.

Civ. A. No. 73–C–175–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

Aug. 5, 1974.

Kenneth C. King, Jr., Roanoke, Va., for plaintiff.

W. A. Dickinson, Hazlegrove, Carr, Dickinson, Smith & Rea, Roanoke, Va., for defendant.

## OPINION and JUDGMENT

DALTON, District Judge.

The Roanoke Times-World Corporation (hereinafter Publisher) entered into a collective bargaining agreement (hereinafter Agreement) [1] with Roanoke, Virginia, Local 210, International Printing Pressmen and Assistants' Union (hereinafter Union), representing pressroom employees of the defendant Publisher. The Agreement was executed on January 1, 1973, and will continue in effect at least through December 31, 1974. A dispute having arisen between the parties in October of 1973, the Union brought this action against the Publisher in this court on December 7, 1973, under section 301 of the Labor Management Relations Act, 61 Stat. 156 (1947), 29 U.S.C. § 185 (1956), to obtain enforcement of the Agreement's grievance procedures and arbitration provisions.

The dispute herein arose when the defendant Publisher granted pay increases, effective September 30, 1973, to certain of its employees, whom the Publisher claims are "supervisory personnel" and whose pay rates it claims are not subject to the provisions of the Agreement. The Union contends that the pay rates of these employees, as journeymen, are controlled by the Agreement, and that the Publisher's action violated the terms of the Agreement, creating an arbitrable dispute or one subject to the grievance procedures of the Agreement.

## ARBITRATION

This court is well aware that its function in a proceeding to compel arbitration is a very limited one. This court has no right to consider the underlying merits involved, as that is not its proper function. United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed. 2d 1403 (1960). Since the obligation to submit a controversy to arbitration is wholly contractual, the answer to the question of whether the dispute is arbitrable depends upon the proper interpretation of the relevant provisions as they appear upon the face of the collective bargaining agreement. Atkinson v. Sinclair Refining Co., 370 U.S. 238, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962).

The court recognizes, too, that arbitration clauses, such as those usually contained in labor-management contracts, should be so construed as to effectuate congressional policy favoring the settlement of labor disputes. It was held in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–583, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960) that:

An order to arbitrate the particular grievance should not be denied unless

---

1. Copies of this Agreement have been introduced as exhibits by both parties.

it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.

■■ On the other hand, it is clear that the parties can in their collective bargaining agreement specifically exclude certain issues from arbitration, and that a reluctant party may not be compelled to submit a controversy to arbitration unless under a fair construction of the agreement he is bound to do so. Atkinson v. Sinclair Refining Co., *supra;* United Steelworkers of America v. Warrior & Gulf Navigation Co., *supra.*

Turning to the Agreement here, it is difficult to find explicit language to support plaintiff's position that this court can order that the dispute here be arbitrated. Section XIII of the Agreement, entitled "Settlement of Disputes", states:

\* \* \* \* \* \*

2. In event a settlement is not reached as provided in Paragraph 1, all disputes which may arise as to the construction to be placed on any clause herein or alleged violation thereof, shall be referred to a Joint Standing Committee of four (4) members, two (2) to be named by the Publisher and two (2) by the Union.

\* \* \* \* \* \*

3. If the Joint Standing Committee cannot reach a majority agreement on any dispute, including disputes regarding discharged employees, within ten (10) days from the date on which the dispute is first submitted to it, the members of the committee shall form a board of arbitration and shall select a fifth member, who shall be a disinterested party and who shall act as chairman of the board.

\* \* \* \* \* \*

5. It is expressly understood that neither the Joint Standing Committee nor the Board of Arbitration acting

pursuant to this Agreement shall have any power to add to, subtract from, or modify any of the terms or provisions of this agreement or any agreements made supplemental hereto.

It is clear from the arbitration clause in this case that the defendant Publisher, unlike some employers who agree to arbitrate "any and all" disputes arising between themselves and their unions, *see e. g.* the agreement involved in Drake Bakeries, Inc. v. Local 50, American Bakery & Confectionery Workers Intl., 370 U.S 254, 82 S.Ct. 1346, 8 L.Ed.2d 474 (1962), bound itself to arbitrate only "disputes which may arise as to the construction to be placed *on any clause* [therein] or alleged violation thereof." (Emphasis supplied) As such, it is a rather narrow arbitration provision.

There is no provision specific or otherwise in the Agreement, as defendant notes, relative to the wages to be earned by assistant foremen, save for what can be read into Section III, "Scale of Wages", which reads:

1. (a) Effective December 31, 1972, and retroactive thereto, all journeymen shall receive not less than $4.8443 per hour (181.66 per week) for day work and not less than $5.0443 per hour ($189.16 per week) for night work.

(b) Effective December 30, 1973, all journeymen shall receive not less than $5.1163 per hour ($191.86 per week) for day work and not less than $5.3163 per hour ($199.36 per week) for night work.

2. It is understood that a journeyman performing temporarily as man in charge, in the absence of the foreman or assistant foreman, the duties of assistant foreman, shall receive the basic assistant foreman's rate, which shall exceed the journeyman's rate.

Plaintiff makes no claim that defendant failed to pay each journeyman at least the minimum pay as specified in the contract. No member of the plaintiff Union whose deposition was taken

in this case was able to cite any instance where the defendant had failed to pay the minimum wage specified in the contract.[2] Neither does plaintiff allege that the assistant foremen's pay fails to satisfy the requirement implicit in Section III, paragraph 2 that it be higher than the journeyman's rate.

■ It should be emphasized that paragraph 2 of Section XIII of the Agreement here involved in effect defines an arbitrable dispute as one which arises as to the construction of any clause of the contract or alleged violation of any such clause. In addition, paragraph 5 of Section XIII very specifically limits the powers of the Joint Standing Committee and Board of Arbitration acting pursuant to the Agreement by stating that they shall not have any power to add to, subtract from or modify any of the terms or provisions of the Agreement. Not only has plaintiff failed to specify in its statement of its grievance or in its pleadings in this court any provision of the contract it claims was violated by increasing the pay of and promoting certain assistant foremen, but the President of the Union admitted in his deposition that he is unable to specify any provision of the contract which the pay increases violated, or any clause of the contract which needs to be construed. (Adams Dep. at 13–16)

The court is of the opinion that if it were to require that the dispute herein be arbitrated, something more than is in the Agreement would have to be read into it by the court. This the court cannot do. The defendant is correct under the circumstances in asking that the Union at least point to specific contract language which covers the subject of the grievance.

Support for the conclusion of this court may be found in the case of Boeing Co. v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, 231 F.Supp. 930 (E.D.Pa. 1964), aff'd. 349 F.2d 412 (3rd Cir. 1965). The company therein similarly bound itself to arbitrate only grievances "involving the interpretation or application of the provisions" of the agreement, and the arbitrator was similarly prohibited from adding to, subtracting from or changing any provision of the agreement. The court ruled that the company was not bound to arbitrate a dispute over the termination of the practice of distributing turkeys at Christmas to employees, when such action did not violate any specific provision of the written contract. *See also* United Steelworkers of America, Local 1617 v. General Fireproofing Co., 464 F.2d 726 (6th Cir. 1972); General Telephone Company of California v. Communication's Workers of America, 402 F.2d 255 (9th Cir. 1968); Department Store, Package, Grocery, Paper House, Liquor and Meat Drivers, Helpers and Warehousemen, Local Union No. 955 v. Bermingham-Prosser Paper Co., 364 F.Supp. 426 (W. D.Mo. 1973); Lodge 2036, International Association of Machinists and Aerospace Workers v. H. D. Hudson Mfg. Co., 331 F.Supp. 361 (D.Minn. 1971).

■ In view of the above discussion, it cannot be said that the Publisher has bound itself to arbitrate the dispute, and the court must enter summary judgment in favor of the defendant on this count.[3]

2. James L. Adams, President of the plaintiff Union, and Robert J. Staley were deposed on February 7, 1974. Bud Lambert, P. U. Whitlock, R. P. Tavenner and C. E. Turner (a Union member and member of the Joint Standing Committee) were deposed on February 21, 1974.

3. The defendant has moved that this action be dismissed on the ground that the Union has now filed an unfair labor practice charge with the National Labor Relations Board involving the identical facts contained in this action. This the court cannot do. No policy defined in the Labor Management Relations Act affords any immunity to parties to an arbitration agreement or makes pendency of an unfair labor practice charge any basis for denial of an injunction requiring arbitration. New Orleans Typographical Union No. 17 v. N.L.R.B., 368 F.2d 755, 766 (5th Cir.

■ The court is of the opinion that the dispute herein, while not compulsorily arbitrable, is one subject to the grievance procedures enumerated in the Agreement. However, the most that the court could do under this provision would be to order that the two parties meet and attempt to amicably settle their dispute in accordance with Section I, paragraph 2, and Section XIII, paragraph 1 of the Agreement. Since the filing of this action, representatives of the Union and Publisher have met with a field examiner of the National Labor Relations Board (hereinafter Board), upon an unfair labor practice charge filed by the Union against the Publisher involving the same dispute underlying this action. The Union has since withdrawn the unfair labor practice charge, and has executed a petition requesting the Board to clarify the unit of employees eligible to be represented by the Union, and hence, those subject to the provisions of the Agreement. This new administrative process set in motion by the Union will result in a formal hearing before a hearing officer of the Board on August 22, 1974, which will be followed by a ruling of the Board determining the technical status of the assistant foremen in the Publisher's pressroom, according to the defendant. This court could not do as much. The court could do no more under its interpretation of the terms of the Agreement than to order the parties to meet, which they have now done and are continuing to do before the Board. The need for any injunctive relief that the court might grant in this regard has now effectively been mooted. For this reason, plaintiff's motion for such relief is hereby denied.

For the above reasons, it is ordered that this action be and the same is hereby dismissed, without prejudice, with the plaintiff and defendant each bearing their own respective costs.

1966) ; United Steelworkers v. American International Aluminum Corp., 334 F.2d 147, 152 (5th Cir. 1964).

In addition, it appears that the Union has now withdrawn the unfair labor practice charge.