**LOCAL 771, I.A.T.S.E., AFL–CIO,**
**Plaintiff,**

**v.**

**RKO GENERAL, INC., WOR**
**DIVISION, Defendant.**

**No. 75 Civ. 906 (MP).**

United States District Court,
S. D. New York.

Aug. 24, 1976.

Howard N. Meyer, New York City, for plaintiff.

Proskauer, Rose, Goetz & Mendelsohn, L. Robert Batterman, Franklin S. Bonem, and Jonathan L. Sulds, New York City, for defendant.

## OPINION

POLLACK, District Judge.

The employer (sometimes "the Company" hereafter) seeks to confirm and the Union (sometimes "Local 771" hereafter) on behalf of employees seeks to vacate an arbitrator's Award declaring that a labor dispute submitted for arbitration pursuant to the collective bargaining agreement between the parties is no longer arbitrable because it is time barred under the limitary provision of that agreement.

The controversy started out as a lawsuit before the Court filed on February 21, 1975 based on Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 and 28 U.S.C. § 2201 in which part of the relief sought by the Union plaintiff was to compel the employer defendant to arbitrate the labor dispute in question. No actual demand for arbitration, other than that contained in the complaint herein, was theretofore ever made by the Union.

On January 12, 1976, the Union, for the first time, made a formal demand for arbitration of the labor dispute in question, in conformance with the rules of the American Arbitration Association incorporated in the collective bargaining agreement between the Union and the Employer. Pursuant to that demand the American Arbitration Association took jurisdiction and appointed an Arbitrator and the parties proceeded before him. The Employer's answer before the American Arbitration Association asserted that arbitration was time barred under the terms of the agreement for arbitration contained in the collective bargaining agreement.

On April 9, 1976 the arbitrator, Eric Schmertz, rendered the award that is the subject of these motions. Setting the relevant "event" which triggered the running of the contractual limitary period at or about February 21, 1975, Schmertz decided that the contractually-required demand for arbitration was not filed within the requisite ninety days and, therefore, the dispute was not arbitrable. He noted the ambiguity of the clause of the agreement which articulates the ninety day rule but reasoned that if that clause (Article 15.02) doesn't require the filing and completion of arbitration within ninety days it at least required filing within that period. The filing of this action cannot be deemed a sufficient demand and no action taken by the Company during the pendency of this action constituted a waiver of the ninety day rule, according to the arbitrator.

The Union, seeking to vacate this Award, contends that the filing of this suit demanding arbitration relief satisfied the timeliness requirement of the arbitration agreement and that the Employer's course of action tolled the limitary period provided by the arbitration agreement and estops the Employer from asserting untimeliness of demand.

For the reasons set out hereafter the motion to confirm the Award is granted and the cross-motion to vacate the Award is accordingly denied.

I.

The defendant herein ("the Company"), is a division of RKO General which owns and operates a New York City television station, and moves pursuant to 9 U.S.C. §§ 9 and 13 to confirm the arbitrator's findings that the dispute herein is not arbitrable because of plaintiff's failure to make a timely demand for arbitration. The Company has its principal place of business in New York but does sufficient out-of-state business to qualify as an "employer . . . engaged in commerce" under 29 U.S.C. §§ 152(2), (6) and (7).

The substantive dispute between the parties arises out of the Company's work assignments in connection with the operation of its new "mini-cam" television cameras.

Originally there were two plaintiffs in this suit, two local unions representing certain of the Company's employees who claim the right to perform specific functions related to the use of this new camera. Local 644 of the International Photographers of the Motion Pictures ("Local 644"), the plaintiff union which represents those employees who claimed but were denied the right to actually operate the new camera, was dismissed from the suit by stipulation on March 12, 1976.

The remaining plaintiff, Local 771 of the Motion Picture Film Editors ("Local 771"), represents present and former employees who claim the right to edit the videotape produced by the mini-cam. It, like Local 644, is affiliated with the International Alliance of Theatrical State Employees and Moving Picture Machine Operators, AFL–CIO (hereafter "the International") and represents employees in an industry affecting commerce within the meaning of 29 U.S.C. §§ 152(3), (4). Local 771 moves to vacate the arbitrator's award pursuant to 9 U.S.C. § 10.

*The History of the Dispute*

In 1970 the Company, whose television station was not known as a particularly "news-oriented" station, decided for the first time to broadcast a daily, one-half

hour news program. As a result, it purchased two hand-held 16 mm. film cameras for newsgathering and hired members of Local 644 as film cameramen and members of Local 771 as news film editors. In addition, members of another union also affiliated with the International (Local 52 of the Motion Picture Mechanics) were hired to handle the light and sound equipment used along with the film cameras.[1]

In late 1974, the Company removed its film cameras from its newsgathering operations and procured two new "mini-cam" television cameras which produce videotape directly rather than ordinary film. Before assigning the various aspects of the work involved in the use of this new device, the Company notified the local unions of its decision to introduce the new equipment. Each local claimed jurisdiction under its collective bargaining agreement over some aspect of the mini-cam work.

However, on February 21, 1975 the Company announced its decision to assign all of that work to its Radio and Television Department (the "R & T Unit" or "the Engineers"), the employees of which are represented by the International but no member of which is represented by any of the above-mentioned local unions. All the members of Locals 52 and 644 working for the Company and two members of Local 771 were notified of their termination.

On the same day as the Company's announcement, Locals 644 and 771 filed this suit. Their initial complaint sought (1) a declaratory judgment that the Company was under a contractual obligation to employ members of Local 644 to perform the functions set out in the collective bargaining agreement; (2) an order compelling a multilateral arbitration of the work assignment dispute over the editing, which arbitration would include Local 771, the Company and the International (which was named as a defendant along with the Company); (3) an order granting "appropriate equita-

ble relief" directing defendants to act in compliance with their agreements with plaintiffs; and (4) "such other and further relief as to the Court may seem just and proper."

However, only a few days after this initial filing, the plaintiffs submitted an amended complaint which dropped the International as a defendant and substituted a claim for bilateral arbitration between Local 771 and the Company for the initial request for multilateral arbitration. This amendment was apparently made in reliance on the International's alleged representation that it would not challenge the three local unions' claim to the mini-cam work. (See ¶ 10 of the amended complaint.)

Local 771's general claim is that under their collective bargaining agreement with the Company (hereafter "the Agreement") its members have a right to perform the image editing work. It cites the following language from the Agreement's Article XVIII:

> The scope of this Agreement shall include all Film Editors, TV Editors and Assistant TV Editors, and Editing Room Assistants. All employees engaged in the re-editing and/or cutting and/or assembling of positive film prints and/or negative film. [sic] Music Film Tracks and Sound Effects Tracks are covered by this Agreement.

> The scope of this Agreement shall also include foregoing work functions [sic] whether made on or by film, *tape* or otherwise, and whether produced by means of motion picture cameras, electronic cameras or devices, tape devices or any combination of the foregoing, or any other means, methods or devices now used or which may hereafter be adopted. [emphasis added]

Article XV of the Agreement between Local 771 and the Company provides that disputes between the signatories will be subject to a grievance procedure set out in

---

1. Local 52, which is not a party to this action, has brought an independent action in this Court seeking essentially the same relief as is sought herein. *Moshlak v. RKO*, Dkt. No. 75–877.

that Article [2] and "no other matters shall be subject to arbitration." It also provides that "[a]rbitration must be resolved ninety (90) days after the occurance [sic] of the event or ninety (90) days after the Union should have had knowledge of the event."

Under the Article on arbitration (Article XVI of the agreement between the parties)

[t]he parties may submit to arbitration in accordance with the rules of the American Arbitration Association upon written request of either party, provided, however, that by mutual agreement the parties may agree to the selection of an arbitrator through other than the regular American Arbitration Association selection process.[3]

No actual demand for arbitration, other than that contained in the complaint herein, was made by Local 771 in this period in early 1975.

At about the time of the filing of the complaint in this action, Locals 52 and 644 set up picket lines in protest to the Company's work assignment actions. These picket lines were honored by members of Local 771 (some of whose members still did and still do perform film editing work on non-news related portions of the Company's operations).

As a response to this picketing, the Company filed unfair labor practice charges against the Local Unions with the National Labor Relations Board (NLRB). It asserted that those Unions had violated sections 8(b)(4)(i) and 8(b)(4)(ii)(D) of the National Labor Relations Act (NLRA). The Company also filed its answer to the complaint in this action, asserting as affirmative defenses the claims that the NLRB had primary jurisdiction of the case, that the complaint failed to state a claim on which relief could be granted, and that plaintiffs had failed to join indispensable parties pursuant to Rule 19(a), Fed.R.Civ.P.

A preliminary injunction against the picketing was sought by the Company and granted by Judge Brieant of this Court on April 10, 1975, the same day that the NLRB began hearings on the dispute pursuant to § 10(k) of the NLRA.

On August 18, 1975, the NLRB rendered a decision upholding the Company's work assignments in their entirety. However, in that decision the Board distinguished between two allegedly distinct portions of newsfilm or videotape editing. It observed that such editing involves both the actual operation of the editing machine and the exercise of creative judgment as to the content of the final portion. Since the Engineers claimed only the right to work the editing machines and perform just so much of the judgmental work as is inherent in the operation of those machines, the Board made its decision applicable only to that portion of the image editing work. No decision was rendered on the strictly creative portion of the editing work.

In October of 1975, the Board issued an unfair labor practice complaint against the Unions and, after those Unions acquiesced in the Board's decision, it relinquished jurisdiction on November 28, 1975.

After negotiations between Local 771 and the Company over the judgmental aspect of

---

**2.** The record does not indicate whether or not the grievance procedures enumerated in the Agreement have been strictly complied with. However, in light of the result reached herein, the Court need not reach that issue. *See infra.*

**3.** The remainder of this arbitration Article reads as follows:

16.02 The Arbitrator shall consider each case solely on its merits and this Agreement shall constitute the basis upon which the decision shall be rendered. The arbitrator shall have no power to alter, amend, revoke or suspend any of the provisions of this Agreement.

16.03 The decision of the Arbitrator shall be binding upon both parties for the duration of this Agreement.

16.04 Should any party fail, upon written notice, to appear before the Arbitrator in any matter submitted for arbitration as herein provided, the Arbitrator may proceed with the hearing, and render his decision upon the testimony and evidence presented, which decision shall be binding and shall have the same force and effect as if both parties were present.

16.05 The Arbitrator's decision shall be based only on evidence presented to him in the presence of both parties or otherwise made available to both parties.

the editing work broke down, Local 771 sought arbitration of the dispute.[4]

## II.

*The Legal Standards and Arguments*

[1, 2] The bounds of judicial review of an arbitrator's award in a labor dispute have been narrowly drawn by the Supreme Court, *United Steelworkers v. American Manufacturing Co.,* 363 U.S. 564, 567–8, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), and, unlike questions of substantive arbitrability,[5] questions of procedural arbitrability (such as that involved in this case) are to be decided by the arbitrator rather than the courts, *John Wiley & Sons v. Livingston,* 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). Where, as here, the only apparent grounds for vacating an arbitrator's award are those enumerated in 9 U.S.C. § 10(d), that award must stand absent a sufficient showing that the arbitrator "exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." Vacatur is possible under this section only if the arbitrator's decision is fundamentally irrational, *Swift Industries, Inc. v. Botany Industries, Inc.,* 466 F.2d 1125 (3d Cir. 1972), does not draw its essence from the contract between the parties, *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960) or constitutes a manifest disregard of the law, *Sobel*

*v. Hertz, Warner & Co.,* 469 F.2d 1211 (2d Cir. 1972). The fact that the arbitrator's expressed reasoning may not be entirely satisfactory or that he may have made a single mistaken interpretation of the law will not alone support vacatur.

Local 771 wages a multi-faceted attack on the arbitrator's award in the general effort to demonstrate that it is "arbitrary and capricious." It appears to be making basically five arguments: (1) that the Company has consistently advocated multilateral arbitration, which is governed by federal common law rather than the portion of the agreement which contains the ninety day rule and contemplates only bilateral arbitration; (2) that the filing of this case within ninety days of the Company's work assignment decision satisfied the contractual ninety day rule; (3) that the ninety day limitary period was tolled by the Company's referral of the dispute to the NLRB; (4) that the Company's alleged consistent refusal to arbitrate estops it from asserting the ninety day rule; and (5) that the arbitration sought was really over a dispute that arose only after negotiations between the Company and Local over the creative editing work broke down in November of 1975 (less than ninety days before the filing of the formal demand for arbitration).

▮ Though it is true that the courts have the power to order multilateral arbitrations in certain cases, *Columbia Broadcasting System, Inc. v. American Recording*

---

4. Section 7 of the Rules of the American Arbitration Association, entitled "Initiation Under an Arbitration Provision in a Contract," provides that

[a]rbitration under an arbitration provision in a contract may be initiated in the following manner:

(a) The initiating party may give notice to the other party of his intention to arbitrate (Demand), which notice shall contain a statement setting forth the nature of the dispute, the amount involved, if any, the remedy sought, and

(b) By filing at any Regional Office of the AAA two (2) copies of said notice, together with two (2) copies of the arbitration provisions of the contract, together with the appropriate administrative fee as provided in the Administrative Fee Schedule.

The AAA shall give notice of such filing to the other party. If he so desires, the party upon whom the demand for arbitration is made may file an answering statement in duplicate with the AAA within seven days after notice from the AAA, in which event he shall simultaneously send a copy of his answer to the other party. If a monetary claim is made in the answer the appropriate fee provided in the Fee Schedule shall be forwarded to the AAA with the answer. If no answer is filed within the stated time, it will be assumed that the claim is denied. Failure to file an answer shall not operate to delay the arbitration.

5. *See Gangemi v. General Electric Co.,* 532 F.2d 861 (2d Cir. 1976).

*and Broadcasting Assn.,* 414 F.2d 1326 (2d Cir. 1969), and may have the additional power to overlook procedural requirements in relevant bilateral arbitration agreements, *cf. Local 552, Brick Workers v. Hydraulic Press Brick Co.,* 371 F.Supp. 818, 825 (S.D.Mo.1974), the fact is that Local 771 itself demanded bilateral arbitration in this case and, therefore, the resulting arbitral proceedings must be governed by the bilateral arbitration agreement between the parties. Accordingly, this part of Local 771's attack on the award falls away and the propriety of the award must be judged in light of its remaining four arguments.

■ As its second attack on the award, Local 771 argues, in effect, that the complaint in this lawsuit was a sufficient demand for arbitration under Article 16.01 of the collective bargaining agreement since it put the Company on sufficient notice of Local 771's intention to seek arbitration and the particulars of the dispute to be arbitrated. *See* Domke, *The Law and Practice of Commercial Arbitration* § 14.01 (1968). However, the filing of a complaint in a lawsuit did not meet the agreed specifications for demands set out in AAA Rule 7 and incorporated in Article 16.01 of the agreement and, therefore, the arbitrator's refusal to deem it a sufficient demand cannot be termed irrational, *ultra vires* or a clear error of law.

■ Similarly, the filing by the Company of the unfair labor practice complaint with the NLRB cannot be said to have tolled the running of the contractual limitary period; the contrary finding by the arbitrator relying on the agreed manner for instituting arbitral proceedings can hardly be called "arbitrary and capricious." The referral of the dispute to the Board for a § 10(k) hearing did not prevent the parties from proceeding to the arbitration of that dispute. *Typographical Union No. 17 v. NLRB,* 368 F.2d 755, 766–7 (5th Cir. 1966); *Local 210, Printing Pressman v. Times-World Corp.,* 381 F.Supp. 149, 152 n. 3 (W.D.Va.1974); *Cast Optics Corp. v. Textile Workers Union,* 333 F.Supp. 239, 241 (S.D. N.Y.1970).

■ With respect to its fourth argument (i. e. that the Company is estopped from asserting the contractual ninety day limit because of its consistent reluctance to arbitrate), Local 771 cites *Newspaper Guild, Local 69 v. Hearst Corp.,* 504 F.2d 636 (9th Cir. 1974) per Judge Moore of this Circuit sitting by designation, *cert. denied,* 421 U.S. 930 (1975). This case, Local 771 contends, stands for the proposition that, where for two years the employer rejects "all demands for recognition of the employees' claims and for arbitration," *Hearst, supra* at 642, a contractual time limit will not bar an arbitration of those claims. However, as the Company points out, *Hearst* was a case in which the arbitrator

> challenged, *sua sponte,* his own appointment by the AAA and, *by creating a quasi statute of limitations not in the agreement,* decided that the grievances were not arbitrable. . . . *Hearst, supra* at 640. [emphasis added]

It is clear that *Hearst* does not stand for quite the proposition for which Local 771 cites it. Once again, though the Company's reluctance to submit to arbitration is a consideration of no little significance, it does not indicate that the arbitrator's award is legally infirm.

■ Local 771's fifth and final attack on the arbitrator's award, viz., that the actual dispute concerning the creative editing work in particular did not arise until after the negotiations held between the Union and the Company broke down in November of 1975, must give way to the arbitrator's finding which is entirely a reasonable one that the post-November issue is merely a refinement of the original dispute over the editing work which arose in February 1975.

■ Therefore, Local 771's arguments taken separately or together do not demonstrate that the arbitrator's award was so legally or factually unwarranted or irrational or such an excessive exercise of arbitral power as to require vacatur.

### III.

The parties have also briefed the issue of whether the result reached on the motions

requires dismissal of this lawsuit altogether. The Company argues that arbitration was Local 771's exclusive remedy, that that remedy was elected by Local 771 which thereby waived any right to judicial relief, that the only judicial relief sought in the complaint in this lawsuit related to arbitration and the preservation of the status quo pending arbitration and, therefore, that Local 771's failure to timely seek arbitral relief precludes any further effort to obtain judicial relief. It contends that the portion of the complaint that seeks "appropriate equitable relief directing defendant to act in compliance with its agreements with plaintiffs and to refrain from acting to prejudice plaintiffs' rights herein" cannot be construed as a request for judicial relief independent of an order to arbitrate and that, even if it could be so construed, such relief is barred by the arbitral proceedings and the resulting award.

██ The Company misreads both the arbitration clause and the above-quoted portion of the complaint. Article 15.02 of the Agreement provides that "either party shall have the right to refer the matter to arbitration as herein provided." Likewise, Article 16.01 declares that "[t]he parties *may* submit to arbitration." [emphasis added] Neither provision grants anything but an option to proceed to arbitration and neither can be termed "mandatory" or "exclusive" in the sense that such descriptions fit the provisions considered in *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)[6]; *Chambers v. Beaunit Corp.,* 404 F.2d 128 (6th Cir. 1968); *Columbia Broadcasting System, Inc. v. Radio & Television Broadcast Engineers, Local 1212,* 33 Labor Cases ¶ 71,057 (S.D.N.Y.1957); and *River Brand Rice Mills, Inc. v. Latrobe Brewing Co.,* 305 N.Y. 36, 110 N.E.2d 545 (1953) (the cases on which the Company principally relies).

██ In addition, nothing in the above-quoted portion of the prayer for relief in the complaint can be construed as limiting that section of the complaint to a request for "status quo" relief alone. The fact that the Union has not, as the Company points out, pursued the above-quoted section of the complaint when effective status quo relief might have been granted only belies the Company's claim that that section is limited to relief going merely to the status quo. Local 771 has argued throughout that the Company's work assignments were in violation of the Agreement between the parties. An order from this Court directing the Company "to act in compliance with its agreements with plaintiffs and to refrain from acting to prejudice plaintiffs' rights herein" would go directly to the ultimate relief sought and could only have impinged on the domain of the arbitrator.[7] Therefore, the complaint can only

---

**6.** The arbitration provision in *Enterprise Wheel* provided in part that

> [i]t is understood and agreed that neither party will institute *civil suits or legal proceedings* against the other for alleged violation of any of the provisions of this labor contract; instead all disputes will be settled in the manner outlined in this Article III— Adjustment of Grievances.

**7.** In an effort to bolster its interpretation of the prayer for relief in the complaint, the Company cites a letter from Local 771 counsel to this Court stating that:

> I am glad to have the Court retain jurisdiction either for the purpose of (a) the motion to stay [arbitration], if the employer actually authorizes his attorney to make such a motion, or (b) motion to confirm the award if such a motion is necessary [sic].

However, the Court is not persuaded that this letter can be read as a waiver of any claim for judicial relief independent of an order involving arbitration. Indeed, the letter which was written well after the NLRB decision, explicitly recognized the possibility that arbitration would be stayed, leaving this or some other Court as the only apparent avenue for resolution of the substantive disputes between the parties.

The Company also argues that the fact that a previous section of the prayer for relief seeks direct declaratory relief indicates that the above-quoted section of that clause only seeks "status quo" relief. However, as acknowledged by the Company, that previous section of the prayers applies only to Local 644 and the dispute over the camera-handling work assignments. It does not limit the subsequent broader portion of the prayers merely because it specifically requests declaratory relief with re-

be interpreted as seeking judicial and arbitral relief alternatively.

 Therefore, the Court must decide whether an arbitrator's finding of procedural non-arbitrability, in a case involving what may be called an optional arbitration provision, is *res judicata* with respect to a previously filed claim for judicial relief from the same harm alleged in the demand for arbitration.

In *River Brand, supra,* one of the principal cases cited by the Company, the New York Court of Appeals affirmed the granting of a stay of judicial proceedings under § 1451 of the then-effective Civil Practice Act. *See* N.Y. CPLR § 7503. That stay was granted on the ground that the dispute in that case was referrable to arbitration, even though arbitration had already been permanently enjoined as being time-barred under a contractual limitary provision. Judge Conway declared that the reason for precluding any judicial action subsequent to an adverse arbitrator's decision on procedural arbitrability was to avoid the flouting of mandatory arbitration clauses.[8] He reasoned that

> Were the one of the parties to an arbitration agreement, containing a time limitation, permitted to allow such limitation to expire and then sue at law on the claim which it had agreed to arbitrate, the result would be a return to the situation obtaining when agreements to arbitrate were revocable at the will of a party thereto. *River Brand, supra* at 41, 110 N.E. at 547.

In this case, the optional nature of the arbitration clause explicitly gave either party to the agreement the power to choose between the courts and an arbitrator. Whereas the creation of such an option in a case involving a mandatory or exclusive arbitration clause would be a clear abuse (as noted by Judge Conway), option is the essence of the type of arbitration clause the parties bargained for in this case. The rationale of the *River Brand* opinion is, therefore, clearly inapposite.

Similarly, the reasoning in the other two principal cases cited by the Company, *Chambers, supra,* and *Columbia Broadcasting System, supra,* both of which involved mandatory arbitration clauses providing arbitration as the exclusive form of relief to settle grievances[9] is not binding or even relevant in this case.

Given the optional nature of the arbitration clause and the Company's refusal to submit to arbitration until after any demand for arbitration had become otiose, the Court can find no relevant distinction between this case and one in which a party is procedurally barred in one forum but goes on to litigate his claims in another forum free from any claim of the bar of *res judicata.*

In general, the Company's claim that Local 771's non-purposefully tardy demand for arbitration constituted an irrevocable election of an exclusive remedy must fail in light of the optional nature of the arbitration clause, and the Company's failure to

---

spect to a dispute not relevant to the issues presently *sub judice.*

8. The arbitration clause involved in that case provided that "[a]ny controversy or claim arising out of or relating to this contract *shall* be settled by arbitration. . . ." [emphasis added]

9. As in this case, the arbitration clause in *Chambers* provided that arbitration would be "binding" (though unlike the clause here, the arbitration clause in *Chambers* provided that arbitration would be "final and binding." Though the Court in *Chambers* does not quote the full arbitration clause, it does make it clear that the obligation to arbitrate was mandatory,

referring to the submission of the dispute to arbitration as a "contractual obligation."

The arbitration clause in *Columbia Broadcasting System* explicitly declared that failure to make a timely demand for arbitration would constitute a waiver:

> Where any specific grievance has been brought to the attention of CBS and the Union has not proceeded to arbitration under the procedures set out in Section 2.03 for a period of six (6) months subsequent to the date upon which such grievance was first brought to the attention of CBS, said grievance shall be deemed finally waived and disposed of and may not be subsequently arbitrated.

seek a stay of so much of this lawsuit which undeniably sought direct judicial relief.

The substantive claims in the complaint have not been "squarely presented to" and/or passed on by either the NLRB or the arbitrator. *See Goldstein v. Doft,* 236 F.Supp. 730 (S.D.N.Y.1964), *aff'd,* 353 F.2d 484 (2d Cir. 1965), *cert. denied,* 383 U.S. 960, 86 S.Ct. 1226, 16 L.Ed.2d 302 (1966); *Driscoll v. Humble Oil & Refining Co.,* 60 F.R.D. 230, 85 LRRM 2237 (S.D.N.Y.1973). They may, therefore, be pursued in this Court.

Accordingly, the motion to confirm the arbitrator's award is granted and the motion to vacate is denied, but the pending action for judicial relief may proceed in this Court.

SO ORDERED.